HUSTING, Appellant, v. HUSTING, Respondent.

*No. 261. Argued February 3, 1972.—Decided March 2, 1972.*
(Also reported in 194 N. W. 2d 801.)

For the appellant there was a brief by *Ruppa & Wegner,* attorneys, and *Norman W. Wegner* of counsel, all of Milwaukee, and oral argument by *Nathan Ruppa.*

For the respondent there was a brief by *Meldman & Kahn,* attorneys, and *Patrick T. McMahon* of counsel, all of Milwaukee, and oral argument by *Mr. McMahon.*

CONNOR T. HANSEN, J. Appeals from the judgment, the order of December 11, 1970, denying the petition for

review, and the order of January 25, 1971, denying plaintiff's application for attorney's fees and costs for appeal to this court, are properly before us for review.[1]

The parties were married October 12, 1940. One son was born to them who has reached his majority and has married. At the time this action was commenced, the plaintiff was fifty-one years of age, a housewife, and had not been employed since shortly after the parties were married. The defendant was fifty-two years of age and was employed as a sales manager of a manufacturing firm. He has been employed by the same firm for approximately thirty-five years. Prior to the commencement of this action, the defendant had engaged in an association with another woman. The record supports the finding of the trial court that the allegation of adultery had been proved by clear, satisfactory and convincing evidence.

Additional facts will be set forth in considering the five issues presented on this appeal:

(1) Was there an abuse of discretion in the judgment of property division?

(2) Was there an abuse of discretion in the amount of alimony awarded?

(3) Did the trial court abuse its discretion in failing to cite the defendant for contempt for allegedly violating the temporary order of the family court commissioner?

(4) Did the trial court abuse its discretion in granting an absolute divorce?

(5) Was there an abuse of discretion in denying plaintiff an allowance of attorney's fees to appeal to this court?

---

[1] The order of October 5, 1970, denying the petition of the plaintiff to review the decision of the circuit court, prior to judgment, is not an appealable order. *See Sprangers v. Philippi* (1971), 52 Wis. 2d 403, 190 N. W. 2d 136.

*Division of property and award of alimony.*

The judgment of divorce awarded approximately one third of the estate of the parties to the plaintiff as a property settlement and directed the defendant to pay the plaintiff $600 a month as alimony, and $208 annually so plaintiff could maintain existing life insurance policies on the life of the defendant which were awarded to her.

This court has stated many times that the division of property and the award of alimony in a divorce action is within the sound discretion of the trial court and unless an abuse thereof can be shown, the provisions of the judgment relating thereto will not be upset. *Lacey v. Lacey* (1970), 45 Wis. 2d 378, 173 N. W. 2d 142; *Leeder v. Leeder* (1970), 46 Wis. 2d 464, 175 N. W. 2d 262; *Seiler v. Seiler* (1970), 48 Wis. 2d 400, 180 N. W. 2d 627; *Hirth v. Hirth* (1970), 48 Wis. 2d 491, 180 N. W. 2d 601; *Balaam v. Balaam* (1971), 52 Wis. 2d 20, 187 N. W. 2d 867. In *Lacey v. Lacey, supra,* pages 383, 384, this court enumerated some of the factors to be considered in a property division:

". . . Whatever is material and relevant in establishing a fair and equitable basis for division of the property of the parties may be considered. Such relevant factors certainly include the length of the marriage, the age and health of the parties, their ability to support themselves, liability for debts or support of children, general circumstances, including grievous misconduct, although a division is not a penalty imposed for fault. Whether the property award is in lieu of or in addition to alimony payments is a material factor. Whether the property was acquired during the marriage or brought to the marriage makes a difference. . . ."

An examination of the record supports the conclusion that the trial court considered all these factors together with the tax consequences to both parties in its findings of fact and on post-trial hearings for review.

At the first post-trial proceeding, the trial court explained that the property division and award of alimony were made in an effort to provide for the plaintiff in the manner in which she had been accustomed for the past twenty-nine years. The property awarded to the plaintiff consisted principally of the house and household goods owned by the parties, one of the automobiles, and a $3,000 cash award intended to relieve plaintiff of her present obligations so she would be able to start with a fresh slate. The property awarded to the defendant consisted primarily of stocks and bonds, and an automobile. At this post-trial hearing, and at the request of plaintiff's counsel, the court further awarded the plaintiff two life insurance policies on the life of defendant valued at $3,884.17, and directed the payment of additional alimony in the amount of $208 annually to maintain these policies, and that the defendant pay the interest on a policy loan he had made against these policies.

As was stated in *Lacey v. Lacey, supra,* whether the property award is in lieu of or in addition to alimony payments is a material factor. The defendant's gross salary was approximately $32,000 annually, plus a yearly bonus, dependent on the profits of the company, which was generally 10 to 16 percent of his salary. Defendant's bimonthly salary, after taxes, was approximately $890. The award of alimony was $600 per month.

Plaintiff contends the alimony award is inadequate in relation to her living expenses. The record reflects the parties had kept a detailed account and budget of all their expenses since the inception of the marriage. These figures were considered by the trial judge. At the trial, the plaintiff submitted a proposed monthly budget for herself in the amount of $789. With respect to some of the items in the budget she testified she had never previously spent $45 per month for beauty shops and that her average monthly expenditure for clothing had not

been $100. She further testified about some anticipated medical needs.

In *Hirth v. Hirth, supra,* page 494, this court stated:

> *"Station in life.* The mode and standard of living of the parties during their marriage is one, but only one, of the factors that may be considered by the court. This is not to imply any entitlement of the wife to live, after divorce or separation, at same socioeconomic level that marked the years of living together. Ordinarily this is not possible. Whether or not two can live as cheaply as one, two persons living under two roofs cannot live as well as the same two persons living under one roof. Court concern must be given to entitling both to live separately as reasonably well as is possible under the circumstances. . . ."

We find the trial court fully considered the evidence offered by the plaintiff, both at trial and in post-trial reviews. In this case the marriage was of long duration; there were no minor children; the plaintiff had no separate estate; and the dissolution of the marriage was attributable to the conduct of the defendant. The trial court awarded the plaintiff at least one third of the estate; the portion awarded to the defendant was invested primarily in stocks and bonds. The plaintiff also received a substantial award of alimony. At the time of trial, and on review, the trial court gave thorough consideration to all relevant factors in determining the division of the property and awarding alimony. Under the facts, as revealed in the record of this case, it cannot be said that the trial court abused its discretion.

### *Failure to cite defendant for contempt.*

A temporary order of the family court commissioner is on a printed form. Item 6 of the printed form contains a general restraining order directed toward disposing of assets. Page two of the temporary order contains some

typewritten provisions directly relating to specific matters in this case. Among these specific provisions is an order that the defendant ". . . make no further loans or pledges on Maccabee life insurance policy . . . Defendant to liquidate $6,000 in stocks & bonds and use proceeds as follows: [to pay certain enumerated debts] . . ." In fact, the defendant sold some securities and borrowed on the cash value of two Prudential life insurance policies to make available the funds to pay the enumerated debts.

It is the contention of the plaintiff-wife that the trial court erred in failing to find the defendant in contempt for violating the temporary order by borrowing on the cash value of the two Prudential policies. She asks that this court send the record back to the trial court with directions that the defendant be punished for his contempt in liquidating the cash values on the two policies. This we decline to do.

At the time of trial the defendant testified that he interpreted the restraining order to relate only to the Maccabee policy specifically mentioned therein, and that in addition thereto he was confronted with a falling stock market. More significantly, we observe that plaintiff asks only that we remand with directions to punish defendant for his alleged contempt. She does not ask that the defendant be ordered to repay the loan to restore the policies to their $7,000 face value instead of their present value of approximately $4,000. The reason for no such request is obvious. It was only after the trial court's initial decision that the same was amended, at plaintiff's request, to award her the two policies which are subject to the loans. This was done at a time when all parties, including the trial court, had full knowledge of the loan status of the policies and the defendant was ordered to pay the interest on the loans.

Assuming that the defendant acted in contempt of the temporary order, under the circumstances in this case the plaintiff was not prejudiced by the action of the de-

fendant. In the absence of any prejudice, the trial court did not abuse its discretion in failing to cite the defendant for contempt. *Heffernan v. Heffernan* (1965), 27 Wis. 2d 307, 134 N. W. 2d 439.

## *Granting an absolute divorce.*

At the trial the plaintiff testified that she was asking for a legal separation only and that she had conscientious objections to divorce for religious reasons. She further testified that she still loved the defendant and was willing to take him back, and that she had so stated to the defendant. Also, that she did not want a separation but was advised that the only way to try and save the marriage was to start a legal action. That until about a year before the action was commenced they had enjoyed a happy marriage except for some arguments over the significant amount of their savings that defendant was investing in securities.

On the other side of the coin, it appears plaintiff learned of the defendant's association with another woman (a twenty-three-year-old former receptionist at his place of employment) as a result of some information found in his pocketbook. She went to Colorado to confirm the fact that her husband and another woman had stayed at a particular lodge. Also she paid a detective agency $1,100 to have a surveillance conducted over a period of time relating to the activities of both her husband and the other woman. The plaintiff also rather extensively refurbished the house with considerable new furniture and draperies after the commencement of the action, all at the expense of the defendant.

Defendant testified there was absolutely no chance of reconciliation and that living with the plaintiff had been detrimental to his health. He had no conscientious objections to divorce. He denied that the plaintiff ever communicated to him that she wanted to reconcile their

differences; that she wanted him back; that she loved him; or that she would forgive him. He testified he had had a very unhappy married life for at least the past ten years. He further testified she had told him she was going to run him into the ground. On rebuttal, the plaintiff denied making such a statement.

Under sec. 247.09, Stats., the trial court has the power to grant a decree of divorce in an action which seeks only a legal separation. That section provides:

"247.09 **Power of court in divorce and legal separation actions.** When the court grants a judgment in any action for divorce or legal separation the kind of judgment granted shall be in accordance with the demand of the complaint or counterclaim of the prevailing party, except that a divorce or legal separation may be adjudged regardless of such demand whenever the court finds that it would not be in the best interests of the parties or the children of the marriage to grant such demand and also states the reason therefor. Conscientious objection to divorce shall be deemed a sufficient reason for granting a judgment of legal separation if such objection is confirmed at the trial by the party making such demand."

The statute does not provide that because one of the parties confirms at trial a conscientious objection to divorce and therefore seeks legal separation, that the trial court shall in all cases grant such relief. The statute does, however, provide that a divorce or legal separation may be adjudged regardless of the demand whenever the court finds that it would not be in the best interests of the parties or the children of the marriage to grant such demand and also states the reasons therefor. Wis. Annots. (1970), p. 1203, sec. 247.09. It follows that we must look to the findings of the trial court supporting the granting of the decree of absolute divorce.

"Plaintiff seeks a legal separation, alleging and testifying that she has conscientious objections to divorce.
"Plaintiff and defendant are 51 and 53 years of age, respectively. Their only child is 26 years of age, is emancipated, and does not live with his parents.

"Following the testimony of the plaintiff on her objections to a divorce, the court had a conference in chambers with counsel to determine if efforts at reconciliation had been exhausted. Both counsel assured the court that reconciliation attempts were futile, and the court is now of the same opinion. The court finds that it would not be in the best interests of the parties to grant the request for legal separation. Reconciliation is impossible; a marriage in this instance in law and not in fact is not in the best interests of either party. Plaintiff is free to follow her own conscience or religious conviction as to whether or not she would remarry in the future."

This finding was not challenged at the time of the granting of the divorce on August 28, 1970. However, at the hearing on plaintiff's first petition for review, September 28, 1970, she alleged her attorney advised her he did not inform the court that there was no possibility of reconciliation. The trial court denied the petition for review. In January, 1971, when considering the plaintiff's application for attorney's fees on appeal, the trial court, for the second time, stated its reasons for granting a divorce. Among other things, the trial court again referred to a conference in chambers where both counsel assured the court that reconciliation had been carefully explored and that it was hopeless. The record reflects that a recess was held during the examination of the plaintiff by the trial court in regard to her conscientious objection to divorce. The record does not reflect the results of the in-chambers conference at the time it occurred. Hindsight, of course, reflects that it would have been desirable to have at least the results of the conference in chambers made a part of the record at the time it occurred. The results of any conference in chambers on a material issue should always be made a part of the record. However, the fact remains that the conference in chambers is specifically referred to in the trial judge's findings of fact and was not challenged until the plaintiff filed her second petition for review wherein she alleged

that her attorney advised her he did not so inform the court.

Furthermore, we are of the opinion there is sufficient credible evidence in the record to support the finding of the trial court that attempts at reconciliation had been made, that further attempts in regard thereto would be futile, and that it would not be in the best interests of the parties to grant plaintiff's demand for legal separation. In addition to the testimony of the defendant, the trial court considered the age of the parties, the fact that no minor children were involved, and the fact that each party would be free to follow their own religious convictions as to remarriage. Also, our independent examination of the record leads us to conclude that the conduct of the plaintiff immediately preceding and during the pendency of the action was such that it would not be conducive to a reconciliation, or that it would not be in the best interests of both parties to grant the demands of the plaintiff. The demand of one of the parties for legal separation based on conscientious objection to divorce should not be treated lightly, but should be given serious consideration, as was done by the court in this case. Also, such a demand should not be used as a punitive device because of the misconduct of one of the parties.

In the instant case, the factors the trial court considered are the same criteria upon which this court in *Chase v. Chase* (1963), 20 Wis. 2d 258, 122 N. W. 2d 44, modified a judgment of legal separation to that of absolute divorce.[2] The primary argument of the dissent in *Chase*

---

[2] The trial court in its opinion stated: "Plaintiff is free to follow her own conscience or religious conviction as to whether or not she should remarry in the future." This is accurate as an observation, but not valid as a reason for changing the nature of relief in view of sec. 247.09, Stats., providing: "Conscientious objection to divorce shall be deemed a sufficient reason for granting a judgment of legal separation if such objection is confirmed at the trial by the party making such demand." Any implication to the contrary in *Chase v. Chase, supra,* page 265, is expressly

was that sufficient cause to modify the judgment had not been shown because the same essential factors had been before the trial court when it entered the original judgment. The granting of an absolute divorce was not an abuse of discretion.

### Attorney's fees on appeal.

The criteria upon which a contribution to attorney's fees in divorce actions must be based are a need on the part of the wife and an ability to pay on the part of the husband. In *Hirth v. Hirth, supra,* this court held that the considerations that apply to the payment of alimony apply equally as well for the award of attorney's fees.

In the case before us, the trial court found that even though the plaintiff was without funds to prosecute an appeal, a reasonable ground did not exist to support a belief that an appeal would be successful. We have held such rationale to be an additional element to be considered in awarding an allowance for attorney's fees on appeal. *Klipstein v. Klipstein* (1970), 47 Wis. 2d 314, 177 N. W. 2d 57; *Greenlee v. Greenlee* (1964), 23 Wis. 2d 669, 676, 127 N. W. 2d 737. The decision of the trial court to deny plaintiff attorney's fees for appeal was not a hasty one; it had reviewed its decision on the granting of the divorce and property settlement and award of alimony on several occasions subsequent to trial. On each occasion, it reaffirmed its findings and judgment as within the bounds of its judicial discretion. On the basis of the issues presented, we find no abuse of discretion in denying the application.

However, on appeal we deem it necessary and appropriate to consider the matter of plaintiff's attorney's fees

negatived. The relationship between conscientious objection to divorce and the nature of the relief granted in a divorce or legal separation case is for the legislature to determine, and it has done so.

and the costs of both parties. We have no reason to question the good faith of the appeal and it cannot be said that it is wholly frivolous. After a full review of the record and consideration of the issues presented, we conclude that a reasonable total attorney's fee for the prosecution of this appeal to be $1,000, and that the defendant should be ordered to pay such fee. It is so ordered. It appears the $3,000 awarded to the plaintiff is deposited with the clerk of court and that with additional debts plaintiff has incurred since the granting of the divorce, the total amount of her indebtedness now exceeds the sum so deposited. She is without sufficient funds and should not be required to pay any sum toward her attorney's fees on this appeal.

*By the Court.*—Judgment entered October 5, 1970, and order dated December 11, 1970, affirmed. Order dated January 25, 1971, modified and, as modified, affirmed. No costs to be awarded either party on this appeal.