BLOOMER, Plaintiff-Appellant, v. BLOOMER, Defendant-Respondent.

*No. 75–760. Argued February 7, 1978.—Decided June 30, 1978.*
(Also reported in 267 N.W.2d 235.)

For the appellant there was a brief by *Sperry & Sperry*, and oral argument by *Richard Sperry*, all of Jefferson.

For the respondent there was a brief and oral argument by *Bruce W. Freeberg* of Jefferson.

HEFFERNAN, J. This case arises out of the divorce of the parties and relates to the proper valuation, for the purpose of the division of the marital estate, of Herbert Bloomer's interest in his Wisconsin employee's pension plan.

Herbert and Janet Bloomer were married on April 4, 1953, and at the time of the trial were ages forty-two and thirty-nine, respectively. Trial was held to the court on September 22, 1975. The trial court found that Herbert's retirement fund account with the Wisconsin Department of Employee Trust Funds was an asset of the marital estate subject to consideration in dividing the marital property.

Herbert is a municipal employee, and he has participated in the Wisconsin Retirement Fund continuously from December 1, 1954, through the date of trial. During a part of that time, he made direct employee contributions to the Fund. At the end of the calendar quarter nearest to the commencement of this action, his total contribution to the fund, plus interest, was $8,047.61, exclusive of any employer contributions. This sum would be available immediately to Herbert upon termination of employment but is not available to him as long as he continues his employment.[1]

---

[1] As far as the record indicates, Herbert remained a municipal employee after the divorce. It is clear, however, that any contributions to the retirement fund after the divorce, whether made by employer or employee, would not be assets of the marital estate

In the event Herbert terminates his employment before age fifty-five, he could elect the immediate receipt of the balance of employee contributions plus interest. Alternatively, upon termination of employment before age fifty-five, he could elect to leave this amount invested in the Fund and receive a retirement annuity commencing, at the earliest, at age fifty-five.

If, on the other hand, Herbert continues as an employee and retires at age fifty-five or older, the Fund provides for the payment of a retirement annuity.

The trial court found the present value of Herbert's account to be $2,600, despite the current balance of $8,047.61. The trial court expressed some doubt as to the correctness of the method of computation, but it concluded that this result was required under this court's decision in *Parsons v. Parsons*, 68 Wis.2d 744, 229 N.W.2d 629 (1975). Judgment was entered on November 10, 1975, and it is from the part of the judgment valuing Herbert's interest in the pension fund that Janet appeals.

Janet also petitioned the trial court for an allowance of attorneys' fees and costs on appeal. The trial court denied this petition in an order entered on May 7, 1976. Janet also appeals from this order denying her petition for attorneys' fees and costs.[2]

---

subject to division. Therefore, for the purpose of dividing the marital estate, only that part of the fund or the benefits under it which are attributable to the marriage should be considered. Because of the likelihood of future contributions to the fund, therefore, the fund should be treated as if it were two funds, with only that part of the fund attributable to the marriage being considered and divided.

[2] Janet also attempts to appeal from an order, dated February 25, 1976, which denied her motion to revise the judgment. No new issues were resolved by this issue which could not have been raised on appeal from the judgment itself. Therefore, this order

It is Janet's contention on this appeal that the method of valuation used in *Parsons,* and in the trial court decision in this case, is improper in that it, in effect, results in "double discounting" of the value of the interest in the fund. We agree and therefore reverse.

In many divorce situations, the pension rights of one or both employee spouses are the most significiant marital assets owned by the couple. Dickinson, *Role of Retirement Plans,* 10 Real Prop., Prob. & Tr. J. 644 (1975). The climate for recognition of the rights of the non-employee spouse in the pension plan of the employee spouse seems to be more salubrious in the community-property states. I. Baxter, *Marital Property,* sec. 11.2 (Cum. Supp. 1977). Wisconsin, however, is in the forefront of common-law-property states recognizing the rights of the non-employee spouse. *Schafer v. Schafer,* 3 Wis.2d 166, 87 N.W.2d 803 (1958), determined that pension rights earned during marriage are properly included as a marital asset in dividing the property of the spouses.

Although it is settled that pension rights must be considered, trial courts are presented with a complex task in properly valuing the rights in those plans. Herbert's rights in the pension plan can properly be described as vested, but non-matured. His interest is vested, in the sense that were he to retire immediately, he would not lose all rights under the plan.[3] His interest is non-matured, in that his right to receive payments in the

---

is not appealable. *Gallagher v. Schernecker,* 60 Wis.2d 143, 208 N.W.2d 437 (1973).

[3] Although Herbert's rights in the plan are vested, we note that even non-vested rights must be considered in dividing the marital property. *Leighton v. Leighton,* 81 Wis.2d 620, 261 N.W.2d 457 (1978).

form of a pension based in part on employee contributions will not accrue, at the earliest, until he reaches age fifty-five. *See generally, In re Marriage of Bruegl,* 47 Cal. App.3d 201, 120 Cal. Rptr. 597 (1975), overruled on other grounds, *In re Marriage of Brown,* 15 Cal. 3d 838, 126 Cal. Rptr. 633, 544 P.2d 561 (1976).

The problem of valuing prospective benefits under a pension plan is frequently exacerbated by the fact that unmatured rights may be terminated by death, discharge, or other contingencies. *See generally,* I. Baxter, *supra,* sec. 11.2 (Cum. Supp. 1977) ; Hughes, *Community-Property Aspects of Profit-Sharing and Pension Plans in Texas—Recent Developments and Proposed Guidelines for the Future,* 44 Tex. L. Rev. 860, 879 (1966). Valuation is further complicated by the dual nature of most pension plans. If the employee continues to work until retirement, the payments to the employee, to the extent derived from employer's contributions, are in the nature of deferred compensation. If, however, the employee terminates work before retirement age, the usual plan provides at least for the return of employee contributions. *Leighton v. Leighton,* 81 Wis.2d 620, 261 N.W.2d 457 (1978).

None of the Wisconsin cases have explicitly faced the question presented on this appeal. A variety of methods of valuation have been approved in the individual cases, without any analysis of the proper theory for valuing the asset. In *Schafer v. Schafer, supra,* this court noted that the employee contributions (apparently exclusive of interest) amounted to $4,065.08. The husband was eligible to retire then and would have received $2,880 per year as a pension. We said that this pension, for the husband's life expectancy, discounted at 5 percent, would have a present value of $29,000. It was said that this figure might be too high, since the husband had no intention of retiring at that time. We said, however,

that the intrinsic value of the pension rights was probably as great as the value of the homestead (which was valued at $17,800). After remand, this same case was again appealed to this court in *Schafer v. Schafer*, 9 Wis. 2d 502, 101 N.W.2d 780 (1960) (*Schafer II*). In *Schafer II*, we stated that the husband's contributions plus interest amounted to $6,234.04. He could have retired at the time of trial and received a pension of $237 per month. If he retired at age sixty, he would receive $281 per month. If he were to die immediately, his estate would collect $6,263.04. The evidence was that a private, single-premium annuity equivalent to the husband's rights would cost $49,000. The trial court valued the pension at $6,263.04, and we affirmed. This sum equalled the death benefit currently and also closely approximated the total of employee contributions plus interest.

In *Schneider v. Schneider*, 15 Wis.2d 245, 112 N.W.2d 584 (1961), the husband had $5,000 in the fund, which he would receive if he were to quit, retire, or be fired. Because the husband apparently had no intent to retire at the time, the money would not be immediately available. This court indicated that the proper value should probably be a little less than $5,000, since the funds were not currently available.

In *Kronforst v. Kronforst*, 21 Wis.2d 54, 123 N.W.2d 528 (1963), the husband had $9,749 in the fund, which he was entitled to receive as a lump sum or in annuity form on retirement. The valuation at $9,749 was upheld, and this court analogized the interest in the fund to the interest in a savings account. However, the husband was disabled, and it appeared that he would not return to work, so that for practical purposes the husband was immediately entitled to receive this sum.[4]

---

[4] Unlike the situation in the *Kronforst* case, there is no indication in the present record that Herbert has any intention of retiring early. In *Pinkowski v. Pinkowski*, 67 Wis.2d 176, 226

*Parsons v. Parsons, supra,* was the case relied on by the trial court in reducing the value of the account to the "present value." In *Parsons,* the husband was seventeen years from retirement, and he had $39,495 in his retirement account. The husband argued that this sum had to be discounted to present value, since it was not available until retirement. We have reexamined the briefs in *Parsons,* and they disclose that the wife's argument in that case was simply that full face value should be used, rather than "so called present values." With the arguments presented in this posture, we held that present values must be used in dividing the marital assets, and we now reaffirm that much of the holding in *Parsons.* Since the wife in *Parsons* did not really dispute the husband's methodology for calculating present value, we did not question the basic methodology utilized in discounting the value of the account for seventeen years at 5 percent, yielding a value of $17,246.72. In this case, Janet has clearly defined the issue which was not posed in the *Parsons* case—not whether present values should be used but how present value should be calculated.

Janet argues that were the interest in the fund to be determined with reference to the current balance in the account, that balance should not be discounted, because it already equals (or at least approximates) the present value. This case involves a marital asset consisting of $8,047.61 at the time of trial, which will not be available until retirement, since Herbert is not to be forced to retire early, under the *Pinkowski* rule. Assume, for the sake of illustration, that Herbert retires

N.W.2d 518 (1975), we stated that the husband should not be forced to retire early in order to realize the lump-sum retirement benefit. Nevertheless, the present value of the interest must be ascertained and divided by the court. There are a number of ways in which this can properly be done, as we discuss *infra.*

at age sixty-five, twenty-three years after the trial in this case. If the value of Herbert's interest in the fund would be $8,047.61 *when distributed* in twenty-three years, then the trial court would undoubtedly be right in discounting the $8,047.61 for twenty-three years at 5 percent. The error in this method is that the $8,047.61 will continue to accrue interest over the next twenty-three years. Assuming a 5 percent rate of growth, the value of the fund will approximately triple over that period. If we were to take the approximately tripled figure, twenty-three years in the future, and then discount *that* figure at 5 percent, we would end up where we started, with a present value of approximately $8,047.61. To take, however, the uninflated current balance and discount that sum *as if* it were a future sum, as was done in *Parsons* and in the trial court here, is to "double discount" the sum to a figure well below present value. The problem presented by this type of marital asset is that it cannot be reached until some time in the future. Therefore, before it is discounted from its future value to present value, a court must first calculate what it will be worth at a designated time in the future. Were we to adopt Herbert's theory of proper valuation, the effect would be that all future growth of this marital asset would be credited to him, and none to Janet.

Cases involving the discounting of pension benefits to present value typically discuss discounting sums to be paid in the future, at the future rate of payment. For example, in *Ramsey v. Ramsey,* 96 Idaho 672, 535 P.2d 53 (1975), the husband was receiving and would continue to receive $341 per month for life. In this context, where the future payments are known, it is widely recognized that the future payments should be reduced to present value through discounting. Thiede, *The Community Property Interest of the Non-Employee Spouse in Private Employee Retirement Benefits,* 9 U. San Fran.

L. Rev. 635, 662 (1975); Dickinson, *supra*, 10 Real Prop., Prob. & Tr. J. at 646; Projector, *Valuation of Retirement Benefits in Marriage Dissolutions*, 50 L.A. Bar Bull. 229, 231 (1975). In the present case, however, it was inappropriate to discount the present sum as if it were a future sum, without first accounting for future growth in the asset up to the time of distribution.

None of what we have said detracts from the fact that the trial court retains broad discretion in valuing pension rights and in dividing them between the parties. These rights are subject to several different general methods of valuation, and the actual calculations may change radically depending on different actuarial assumptions in respect to particular factors. We do, however, disapprove the method of valuation accepted by the parties in *Parsons*, because it involves double discounting, and find that the trial court's use of this method in the present case amounted to an abuse of discretion, albeit an understandable one, since it was based on the method relied upon by the parties in *Parsons* and not rejected by this court.

We remand this case to the trial court for a determination of value and for a revision of the order apportioning marital assets. Since the pension rights are substantially more valuable than heretofore determined by the trial court, it may be necessary to make a new overall division of the assets. For example, the increased value of the interest in the pension may make it inequitable to require Herbert to satisfy Janet's interest in a lump-sum payment. Other equitable adjustments may be made in the discretion of the trial court.

Because of the substantial element of trial court discretion in valuing pension rights, we can do no more than make some general observations as to appropriate meth-

ods of valuation. There are at least three ways in which the value can be determined. Whether any one of these methods in an appropriate exercise of discretion depends upon the circumstances of the case, the status of the parties, and whether the result is a reasonable valuation of the marital asset.

First, the trial court could consider the amount of Herbert's contributions to the fund, plus interest, and award Janet an appropriate share. W. De Funiak & M. Vaughn, *Principles of Community Property*, sec. 233 (2d ed. 1971). Under this approach, Janet, in the trial court's discretion, would be awarded some portion of the $8,047.-61. Second, the trial court could attempt to calculate the present value of Herbert's retirement benefits when they vest under the plan. *Id.* Under this approach, the benefits payable in the future would have to be discounted for interest in the future, for mortality (the probability that Herbert will die before qualifying for the benefits), and for vesting (since Herbert will have to continue to work at least until age fifty-five before qualifying for fully vested pension rights). Projector, *supra*. The benefits would then have to be calculated with respect to Herbert's life expectancy as a retiree. This calculation involves considerable uncertainty, and the amount yielded changes as different assumptions are used with respect to mortality, job turn-over, etc. In the instant case, the testimony at trial indicated that the present value of the plan calculated in this manner would be in the range of $8,500 to $17,000. The trial court rejected this evidence as being too speculative, and it was its prerogative to do so, as long as it adopted a reasonable manner of calculating the present value. It has been recognized that this kind of calculation can be very difficult and that, where it becomes too speculative, the trial court should use a different method of valuation. *In re Marriage of Pea*, 17 Wash. App. 728, 566 P.2d 212 (1977); *Robbins v. Rob-*

*bins,* 463 S.W.2d 876 (Mo. 1971) ; *In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal. Rptr. 633, 544 P.2d 561 (1976).

Under either of the above two methods, the trial court would have the discretion to order the payment to Janet of her share in either a lump sum or in installments, depending primarily on the other assets and relative financial positions of the parties. The third method, which has been used widely in other states and is referred to as an alternative in *Pinkowski, supra* at 184, is to determine a fixed percentage for Janet of any future payments Herbert receives under the plan, payable to her as, if, and when paid to Herbert. *Blitt v. Blitt,* 139 N.J. Super. 213, 353 A.2d 144 (Ch. Civ. 1976) ; *DeRevere v. DeRevere,* 5 Wash. App. 741, 491 P.2d 249 (1971) ; *In re Marriage of Rister,* 512 S.W.2d 72 (Tex. Civ. App. 1974) ; *In re Marriage of Brown, supra.* Under this approach, of course, it is unnecessary to determine the value of the pension fund at all. The court need do no more than determine the appropriate percentage to which the non-employee spouse is entitled. *In re Marriage of Wilson,* 10 Cal.3d 851, 112 Cal. Rptr. 405, 519 P.2d 165 (1974). In community-property states, the non-employee spouse's share is set at 50 percent of the benefits attributable to earnings during marriage. In Wisconsin, however, the trial court has the discretion to determine the appropriate percentage.

Janet, by motion after judgment, requested an allowance for attorneys' fees and costs on this appeal, which request was denied. In her petition, she requested allowance of the entire estimated cost of appeal, or $2,800 plus costs and disbursements.

Allowance of attorneys' fees and costs on appeal is governed by secs. 247.39 and 251.72, Stats. Janet fol-

lowed these statutory procedures by petitioning for the allowance in the trial court. *Weihert v. Weihert*, 265 Wis. 438, 61 N.W.2d 890 (1953). Whether to grant the allowance is in the sound discretion of the trial court. *Greenlee v. Greenlee*, 23 Wis.2d 669, 127 N.W.2d 737 (1964).

Where trial attorneys' fees are involved, the trial court should consider the need of the wife for the allowance and the ability of the husband to pay. *Dees v. Dees*, 41 Wis.2d 435, 164 N.W.2d 282 (1969). When appellate attorneys' fees are at issue, the trial court must consider an additional factor, whether reasonable grounds exist to support a belief that the appeal will be successful. *Greenlee v. Greenlee, supra,* 23 Wis.2d at 677. Nothing in the trial court's decision indicates that it considered the likelihood that the appeal would be successful. Therefore, the trial court's denial of the allowance constitutes an abuse of discretion, because it failed to consider all the relevant factors and principles of law. *Hennen v. Hennen,* 53 Wis. 2d 600, 193 N.W.2d 717 (1972).

Janet relies on *Husting v. Husting,* 54 Wis.2d 87, 194 N.W.2d 801 (1972). In that case, we expressly found no abuse of discretion in the trial court's denial of the wife's application for attorneys' fees on appeal. Nevertheless, this court ordered the husband to pay $1,000 for fees on appeal. It appears, from a reading of the opinion and the briefs filed in that case, that the statutory responsibility of the trial court to exercise discretion in the allowance of attorneys' fees under secs. 247.39 and 251.-72, Stats., was overlooked. The award by this court of fees in that case, notwithstanding the express finding that there was no abuse of discretion, is inconsistent with the exercise of that discretion by the trial court, and to that extent, we decline to follow *Husting.*

In this case, the trial court abused its discretion in denying the application for appellate attorney fees be-

cause it did not consider the likelihood of success on appeal. Before the decision as to the appropriate contribution to Janet's fees can be made, it is first necessary that it be determined that the total fee is reasonable. *Hennen v. Hennen, supra.* Janet's petition makes an estimate of $2,800 fees and $1,000 costs and disbursements on this appeal. However, no estimate of billable hours is presented in the petition. It is impossible, on this record, to determine whether the total estimated fee is reasonable. Therefore, we remand this issue to the trial court for a determination of Herbert's responsibility to contribute to a reasonable fee.

*By the Court.*—Judgment and order reversed, and cause remanded for proceedings consistent with this opinion.