638 P.2d 714

Julia Barrett JOHNSON,
Petitioner/Appellant,

v.

Emery Peter JOHNSON,
Respondent/Appellee.

No. 2 CA–CIV 3613.

Court of Appeals of Arizona,
Division 2.

Dec. 17, 1980.

Rehearing Denied Jan. 28, 1981.

Review Granted March 3, 1981.

Slutes, Browning, Zlaket & Sakrison, P. C. by James M. Sakrison, Tucson, for petitioner/appellant.

J. Emery Barker, Tucson, for respondent/appellee.

## OPINION

HOWARD, Judge.

This appeal seeks review of the trial court's judgment in a dissolution proceeding. The appellant, Julia Barrett Johnson, contends that the court erred in four instances: (1) In determining the present value of the pension and profit-sharing funds; (2) in determining that certain loans from or secured by appellee's separate property were community debts; (3) in excluding appellee's bonuses as part of his salary for the purpose of establishing a spousal maintenance award and (4) in improperly valuing the community residence.

The facts are as follows. Appellee, Emery Peter Johnson, married appellant, Julia Johnson, in 1964. They were married fourteen years and had three children. During their marriage, the couple acquired a substantial amount of community assets, including both real and personal property. They also incurred many debts in connection with the acquisition of and improve-

ments to their residence as well as payments on their interest in a real property trust and a limited partnership.

Through appellee's employment with a large firm in Tucson, he has acquired a vested right to funds from both a profit-sharing plan and a pension plan. There was at the time of trial $17,047.14 in the profit-sharing fund and $55,380.77 in the pension trust for a total of $72,427.91. Both plans expressly state that distribution of the fund lies within the discretion of an administrative committee. The committee has complete control to determine distribution and thus, while the right to the fund is fully vested, it has not matured into an unconditional right to immediate payment.

Appellant attacks the method employed by the trial court to determine the "actuarial current value" of the fund as required by this court in *Tester v. Tester*, 123 Ariz. 41, 597 P.2d 194 (App.1979). The court used the following method to determine present value: It multiplied the present amount on deposit in each fund by .2775, a figure obtained from a present value table in the American Jurisprudence Desk Book, based on discounting the funds at 6% interest for 22 years. It then awarded the entire amount of interest on the funds, at this discounted value, to appellee. Appellant contends the court improperly valued the sum resulting in a "double discount" because it failed to take into account the interest which will accrue on the present funds on deposit in determining the total value of the sum to be discounted. We agree.

■ The issue of which method should be used to determine present value of a community property fund, such as we have here, which will continue to earn interest after the dissolution of the marriage, has never been addressed by our courts. In *Bloomer v. Bloomer*, 84 Wis.2d 124, 267 N.W.2d 235 (1978), the Wisconsin Supreme Court included the interest to be earned on the employee pension plan until the time of distribution in its determination of the value of the future sum to be discounted to present value. The facts in *Bloomer* are analogous to those here.[1] At the time of trial, the husband's contribution totaled $8,047.61. The trial court discounted their value to $2,600 assuming that he would retire in 23 years. In reversing the trial court, the Wisconsin court reasoned as follows:

"If the value of Herbert's interest in the fund would be $8,047.61 *when distributed* in twenty-three years, then the trial court would undoubtedly be right in discounting the $8,047.61 for twenty-three years at 5 percent. The error in this method is that the $8,047.61 will continue to accrue interest over the next twenty-three years. Assuming a 5 percent rate of growth, the value of the fund will approximately triple over that period. If we were to take the approximately tripled figure, twenty-three years in the future, and then discount *that* figure at 5 percent, we would end up where we started, with a present value of approximately $8,047.61. To take, however, the uninflated current balance and discount that sum *as if* it were a future sum, as was done in *Parsons* [*v. Parsons*, 68 Wis.2d 744, 229 N.W.2d 629] and in the trial court here, is to 'double discount' the sum to a figure well below present value. The problem presented by this type of marital asset is that it cannot be reached until some time in the future. Therefore, before it is discounted from its future value to present value, a court must first calculate what it will be worth at a designated time in the future. Were we to adopt Herbert's theory of proper valuation, the effect would be that all future growth of this marital asset would be credited to him, and none to Janet." (Emphasis in original) 267 N.W.2d at 240.

1. The only difference worth noting is that in *Bloomer*, if the husband were to terminate his employment, the fund would be either immediately available to him or he could use it to purchase an annuity payable at age 55. The fact that he could get the fund immediately however, does not affect the *valuation* of retirement benefits. It would only affect the percentage rate of interest to be earned in the future.

We agree with the *Bloomer* rationale. In determining the "actuarial current value" of a fund which presently exists but which is not immediately payable, the first step is to determine the amount of the fund on the date of distribution. That was not done here. Appellant had a vested right to one-half of the fund, $36,213.95. She cannot have this amount until 22 years from now. In the meantime, her share is drawing interest at the rate of 6% and in 22 years will be worth more than $36,213.95. Since the one-half is hers, she is entitled to one-half of the interest. Since 6% was used to decrease the fund, 6% should be used to increase the fund to reflect its future value, and the result is a "wash." The current value of the fund at the time of trial was $72,427.91 and not the $20,099.00 found by the trial court.

Appellant's second claim concerns the court's determination that seven obligations were loans to the community which resulted in a reduction of her community property award. She contends that the obligations were separate property loans against appellee's separate property which constituted a gift to the community. We disagree.

The facts reveal that appellee borrowed money for community property on seven different occasions. All of the items encumbered were appellee's separate property. He borrowed against a life insurance policy acquired before marriage, a policy on his father's life given to him by his father, and a Savings Certificate of Deposit which was procured by using the proceeds from the sale of his separate real property.

Each asset acquired or improved upon was taken in the name of and on behalf of the community. Since the funds were borrowed during marriage for the purpose of benefitting the community, the debts were community debts. *Ellsworth v. Ellsworth,* 5 Ariz.App. 89, 423 P.2d 364 (1967); *Hofmann Company v. Meisner,* 17 Ariz.App. 263, 497 P.2d 83 (1972). The use of separate property to secure the loans does not transmute the nature of the debt. See *Armstrong v. Turbeville,* 216 S.W. 1101 (Tex. Civ.App.1919); *Foster v. Hackworth,* 164 S.W.2d 796 (Tex.Civ.App.1942).[2] In connection with the community debts, appellant contends there was an error in valuing their interest in a limited partnership. We have examined the record, find it at best to be confusing, and are unable to agree with appellant.

Appellant's third complaint is that the trial court erroneously excluded appellee's bonuses in determining the spousal maintenance and child support award. An award of spousal maintenance and child support is left to the sound discretion of the trial court and unless there is a clear abuse of discretion, this court will not substitute its judgment for that of the lower court. *Sommerfield v. Sommerfield,* 121 Ariz. 575, 592 P.2d 771 (1979); *Spector v. Spector,* 23 Ariz.App. 131, 531 P.2d 176 (1975). There is no evidence that the trial court "excluded" the bonuses in its consideration. On the contrary, the trial court considered everything bearing upon the issue. The trial judge heard testimony from both parties, examined appellant's schedule of expenses, considered her actual expenses and reviewed tax returns for the years 1976 through 1978. The testimony of Bernhardt Collins, the family accountant, was also admitted as to the cash flow problems the parties had and the tax consequences of various methods of support payments. Appellant was awarded $650 per month for two years as spousal maintenance and $250 per child per month for child support. She also received in addition to the house and a car, $9,170 in either liquid assets or cash.[3] The record does not disclose an abuse of discretion.

---

2. The factual situation here is to be distinguished from that in which a spouse seeks reimbursement for separate funds expended to improve community assets. In that respect, see *Mori v. Mori,* 124 Ariz. 193, 603 P.2d 85 (1979); *Baum v. Baum,* 120 Ariz. 140, 584 P.2d 604 (App.1978) and *Ivancovich v. Ivancovich,* 24 Ariz.App. 592, 540 P.2d 718 (1975), distinguished in *Baum v. Baum,* supra.

3. See A.R.S. Sec. 25–319(B)(1) which allows the trial court to consider marital property apportioned to the person seeking maintenance when it determines the amount to be awarded.

The last claim of error which appellant raises concerns the valuation of the parties' residence. Testimony was received from four witnesses, two of whom were experts, placing its value between $150,000 and $265,000. The trial court's conclusion that the house had a fair market value of $208,-000 was reasonable and sustained by the evidence. Appellant's claim that it was not sustained by the evidence because no testimony valued it at that exact figure is without merit. See *State v. Lopez*, 8 Ariz.App. 61, 442 P.2d 884 (1968).

Modifying the judgment to reflect the error committed in valuing the pension and profit sharing funds, we find that the total value of the community property distributed to each party, less community obligations to be paid by each party, is as follows: Julia B. Johnson—$183,957.00; Emery P. Johnson—$89,922.91. The "equalizing" lien is $47,017.05.

The judgment is affirmed as modified.

HATHAWAY, C. J., and RICHMOND, J., concur.