**In re the MARRIAGE OF Pearl Ann VOSS and Theodore John Voss.**

**Upon the Petition of Pearl Ann Voss, Petitioner-Appellant,**

**And Concerning Theodore John Voss, Respondent-Appellee.**

No. 85–1377.

Court of Appeals of Iowa.

Sept. 25, 1986.

As Amended Sept. 30, 1986.

Craig H. Lane, Sioux City, for petitioner-appellant.

P.D. Furlong, Sioux City, for respondent-appellee.

Considered by OXBERGER, C.J., and SNELL, and SACKETT, JJ.

SACKETT, Judge.

Petitioner Pearl Ann Voss appeals from her dissolution decree claiming the alimony and property awards are inequitable. We remand to the trial court.

Pearl Ann Voss and Theodore John Voss were married in 1955. At the time of trial Pearl was 49, Theodore was 54. They have three children who are adults.

When they married Pearl was a certified teacher. Her certification has since expired. She needs three years of college to be recertified. Pearl's last full time job was in 1961. When the parties' first child was born the parties decided Pearl would leave the job market to assume family responsibilities. Pearl has not been gainfully employed outside the home since that time except for occasional part-time employment. Pearl currently is an Avon salesperson but shows little or no net income. Pearl has been hospitalized for depression and suffers a hearing loss. She also has a 50 percent chance of developing Huntington's disease, a hereditary disease which is ultimately fatal. It currently is not curable and results in depression, motor retardation and memory lapse.

Theodore has been employed by Iowa Public Service since 1962. In 1977, he went to night school and in 1979 obtained a Business Administration degree from Westmar College. He currently earns $38,000 annually. In addition to his salary, he has a benefit program which includes medical insurance, dental insurance, sick leave, long-term disability insurance, a retirement plan, life insurance, an employee stock ownership plan, paid holidays and paid vacations. These benefits substantially enhance Theodore's salary package.

The trial court arrived at a property division which it concluded resulted in a nearly equal division of the parties' assets, excluding inherited property. In the division Pearl received assets valued at approximately $53,000. The court valued assets going to Theodore at $46,214. To reach Theodore's total the court valued his pension rights with Iowa Public Service at $6,000. The court also awarded Pearl alimony of $1.00 per year.

In addition to the property acquired by the parties during the marriage they each have inherited undivided interests in farm land in Nebraska. Theodore inherited an undivided one-third interest in 460 acres subject to his stepmother's life use and a power for her to invade the corpus if the income does not provide for her needs. Pearl inherited an undivided one-fifth interest in 240 acres. Theodore inherited $11,000 cash; Pearl, $5,000. Neither party had received his or her inheritance at the time of trial. There was no accurate valuation of the inherited property. The trial court provided each should have their inherited property set aside to them.

Pearl challenges the property and alimony awards. She contends the trial court undervalued Theodore's pension benefits and she was entitled to additional alimony.

## I. PENSIONS

Theodore has a pension plan with Iowa Public Service. The trial court valued his pension right at $6,000. Pearl contends the valuation is too low. Both Theodore and the company make contributions to the plan. As of the date of the dissolution Theodore had contributed approximately $5,000 to the plan. The amount of company contributions are not part of the record, but the company's pension information indicates the company's contributions are considerably larger and are actuarially determined so that when added with the employee's contributions they will provide the benefit levels defined by the plan.

At the time of trial, Theodore's pension plan was vested. This meant Theodore could elect to leave the benefits with the company and be eligible for retirement benefits based on his years of service even if he severed his employment with the company. Furthermore, as of Theodore's 52nd birthday in July, 1983, he could take early retirement and draw a pension at a reduced rate. Theodore testified that the plan

would have paid him $420 [1] per month if taken on his 52nd birthday. By August, 1985, his percent of earned benefits had increased to 76 per cent of earned benefit, or $456.[2] The pension therefore is both vested and matured. An unconditional right to immediate payment exists. I. Baxter, *Marital Property* § 11:2 (Supp.1983); Annot., 94 A.L.R.3rd 176.

Theodore's pension rights are contingent upon his survival. However, the plan does guarantee 60 months of payment.

We agree with the trial court's determination Theodore's pension be considered in the property division. The Iowa Courts have been very clear in directing pension interest be considered based on current worth or present value. *See In re Marriage of Bevers*, 326 N.W.2d 896, 900 (Iowa 1982); *In re Marriage of Yates*, 365 N.W.2d 49, (Iowa App.1985); *In re Marriage of Byall*, 353 N.W.2d 103, 106 (Iowa App.1984).

Present value discounts an award to that amount which, if presently received, could be invested in order to yield the future sum. *DuBois v. DuBois*, 335 N.W.2d 503 (Minn.1983).

> Present value is the sum which a person would take now in return for giving up the right to receive an unknown number of monthly checks in the future. The present value is discounted by various actuarial calculations to reflect contingencies affecting the eventual payout, including discounts for mortality, inflation, interest, probability of vesting and probability of continued employment. Not all of these calculations are applicable to every retirement plan. The present value is reduced to reflect the risk of respondent's death prior to receipt of pension benefits and to take account of the interest that could be earned if the money were now available for investment.

*DuBois*, 335 N.W.2d at 506.

A present value method considers the statistical probability of death, disability, termination, inflation and the receipt of after-acquired property in determining the present value of the expected future benefit. Clemens & Jaffe, *Division and Taxation of Retirement Benefits in Dissolution Proceedings Dividing Property. on Dissolution of Marriage*, 33 Cath.U.L.Rev. 1087, 1105 (1980).

The problem, however, is these rights are subject to several different general methods of valuation, and the actual calculations may change radically depending on different actuarial assumptions in respect to particular factors. *See Bloomer v. Bloomer*, 84 Wis.2d 124, 267 N.W.2d 235, 240 (1978).

Theodore made no attempt to supply the court with a valuation of the current worth of the pension nor did he list it as an asset on his financial statement. We call his attention to Iowa Code § 598.13 (1985) which requires both parties to disclose their financial status. Pearl had an expert testify Theodore would receive a pension of $1,500 per month at age 65 and it would cost $188,000 to buy an annuity to pay a man Theodore's age $1,500 per month commencing at age 65. The trial court rejected the testimony of Pearl's expert and valued the pension plan at approximately $6,000, about the amount of Theodore's contributions.

The difficulty with the testimony of Pearl's expert is it is based on the assumption Theodore will continue to accrue benefits for ten more years. Furthermore, the additional accrual after dissolution is property Theodore acquires *after* the dissolution. There is no basis to award Pearl an interest in property Theodore will acquire *after* the dissolution. The value of the plan at time of dissolution is what is relevant. Pearl should have no interest in the increase between the time of dissolution and retirement.

While we agree the trial court was correct in rejecting the testimony of Pearl's

---

**1.** At age 52 Theodore would have received 70 percent of earned benefits.

**2.** This figure was not adjusted to show wage increases.

expert on valuation, we disagree with the trial court's conclusion to value the pension at an amount nearly equal to Theodore's actual contributions.

The accuracy and fairness of pension valuations is always threatened by differences between life expectancy predictions and the actual life span of each party. *Kottke v. Kottke,* 353 N.W.2d 633, 637 (Minn.App. 1984).

We determine the record before us is not sufficient to determine the present value of Theodore's pension rights.

We remand to the trial court to take further evidence and for a revision of the order dividing assets.

## II. ALIMONY

Pearl also contends the alimony award is inequitable. Pearl devoted nearly 24 years to family responsibilities. During that period she absented herself from the job market. She accumulated no pension rights and little or no payments to an FICA account in her own name. She has dependency benefits because the marriage lasted over 10 years. She can collect only if she remains single, if she and Theodore are both 62 or if she is 60 and Theodore is deceased.[3] Furthermore, she has no coverage for her own disability. It does not appear from the record Pearl will be rehabilitated based on her age, lack of experience in employment outside the home, and her physical and mental problems.

Pearl has assets to assist with her support and probably will have income from her inherited property. All of these items are considered in arriving at the amount necessary for Pearl's support. *See In re Marriage of Williams,* 199 N.W.2d 339, 346 (Iowa 1972); *Schantz v. Schantz,* 163 N.W.2d 398, 405 (Iowa 1968).

■ However, we are unable to assess Pearl's need and Theodore's ability to pay because nowhere in the record is there evidence of the value of the land or the income to be derived therefrom. The inherited farmlands are substantial assets and it is not justified to guess as to their value or the income to be derived from. *See Locke v. Locke,* 246 N.W.2d 246, 253 (Iowa 1976). Inherited property can be considered on the issue of alimony. *In re Marriage of Moffatt,* 279 N.W.2d 15, 20 (Iowa 1979); *In re Marriage of Stewart,* 356 N.W.2d 611, 613 (Iowa App.1984).

The general rule is where an equity case is not in a condition for a final decree, none will be made by this court, but rather the case will be remanded. *Locke,* 246 N.W.2d at 253. Where the evidence is insufficient for the fair de novo determination of an important issue, the case should be returned for more evidence on the subject. *Id.*

Both parties have requested attorney fees on appeal. Both parties are receiving substantial property and are in a position to pay their own fees. The appendix was printed on one side of the paper only in violation of Iowa R.App.P. 16(a). We tax the cost of printing the appendix to Pearl. The balance of the appellate costs are taxed one half to each party.

We hereby remand this case to the district court, which shall take additional evidence and which shall by December 1, 1986, enter a final decree. Either party may then appeal from any provisions of the resulting final decree.

REMANDED.

---

**3.** Missal P. *Social Security Benefits and the Divorced Spouse* 92 Case and Comment 24 (1986),