**In re the MARRIAGE OF Frederick A. McLAUGHLIN and Jean K. McLaughlin.**

**Upon the Petition of Frederick A. McLaughlin, Appellant,**

**And Concerning Jean K. McLaughlin, Appellee.**

No. 93–1643.

Court of Appeals of Iowa.

Nov. 28, 1994.

James L. Sayre of James L. Sayre, P.C., Des Moines, for appellant.

Eric F. Turner of Herrick, Langdon & Langdon, Des Moines, for appellee.

Considered by DONIELSON, C.J., HAYDEN, J., and KEEFE, S.J.,* but decided en banc.

SACKETT, Judge.

Petitioner-appellant Fredrick A. McLaughlin appeals challenging the economic provisions of the decree dissolving his long-term marriage to respondent-appellee Jean K. McLaughlin. We affirm as modified.

Fred and Jean were married in 1968. They have two children, now adults, but still students. Fred and Jean agreed as to future provisions for their children's educational expenses and those issues were not presented to the district court.

Fred, forty-seven at the time of trial, and Jean, forty-six at the time of trial, are both teachers in the Des Moines Independent School System. Fred, who has worked outside the home during the entire marriage, has an annual salary of $39,000. Jean took time out from teaching to remain at home with the parties' children. Jean currently has an annual salary of $28,000.

The trial court valued the parties' assets, including the pension funds of each, and then divided the assets. The trial court divided property other than pension benefits in a manner that allocated $7000 in property to Fred and $90,000 to Jean. The valuation of this property is not disputed. The trial court then valued the pensions. The pension allocated to Fred was valued at $172,522 and the

---

* Senior judge from the first judicial district serving on this court by order of the Iowa Supreme Court.

pension allocated to Jean was valued at $7069. The trial court also awarded Jean alimony of $700 a month for 120 months unless she died sooner, in which event it would terminate at her death. Fred was ordered to pay $3000 toward Jean's attorney fees.

■ The result was based on the trial court's valuation to divide the assets accumulated during the marriage nearly equally. The parties seem in agreement that this is a marriage that calls for a nearly equal division of the accumulated assets, and we would agree. *See In re Marriage of Russell,* 473 N.W.2d 244, 246–47 (Iowa App.1991) (equal division made in twenty-one year marriage where neither party brought substantial assets or debts into marriage). Fred's focal contention is the division made was not equitable because the value assigned to his pension was excessive.

■■ Fred first challenges the valuation date established by the trial court. Fred contends, because he and Jean had been separated for eighteen months prior to the decree, the assets should be valued as of the date of their separation. We disagree. The date of the dissolution is the only reasonable time when an assessment of the parties' net worth should be undertaken. *Locke v. Locke,* 246 N.W.2d 246, 252 (Iowa 1976); *Schantz v. Schantz,* 163 N.W.2d 398, 405 (Iowa 1968). We value property for division purposes at its value at the time of the dissolution. *See Locke,* 246 N.W.2d at 252. It is the net worth of the parties at the time of trial which is relevant in adjusting property rights. *In re Marriage of Muelhaupt,* 439 N.W.2d 656, 661 (Iowa 1989); *In re Marriage of Moffatt,* 279 N.W.2d 15, 20 (Iowa 1979).

■ Fred next challenges the valuation and treatment of the pension right of he and Jean. Retirement plans should be considered in framing the financial clauses of a dissolution decree. *See In re Marriage of Voss,* 396 N.W.2d 801, 803 (Iowa App.1986). We look at the pension rights of both spouses. *In re Marriage of Williams,* 421 N.W.2d 160, 167 (Iowa App.1988); *In re Marriage of Byall,* 353 N.W.2d 103, 106 (Iowa App.1984).

■ The preferred method of valuation of a pension benefit is to divide the plan through a qualified domestic relations order which in essence separates the pension rights into two separate accounts. This allows the court to allocate other assets equitably and assures similar retirement security for both spouses. This could not happen here because the Des Moines Independent School System plans do not provide for such a division.

■ The trial court, in this case, elected to value the pensions and gave Jean an offsetting property and alimony award. This is one method for equitably allocating a pension plan. *See In re Marriage of Jensen,* 396 N.W.2d 367, 369–70 (Iowa App.1986). In such an award, no future litigation is necessary to secure future payments, and the financial circumstances and life expectancy of the spouse owning the award cannot depreciate its value after the dissolution. *See id.* at 370. Where a large portion of the parties' assets are a pension of one spouse, such an allocation can, as it did here, leave Fred with few current assets other than his future pension rights and require current payments of substantial alimony. And, while it leaves the spouse with the more substantial pension, if he or she lives to retirement, a substantial income on retirement, it does not assure the other spouse of income on retirement unless he or she makes voluntary savings for retirement.

Fred contends the value placed on the plans by the trial court was flawed and resulted in a division of property that was not equitable to him. The valuation and division of pension rights in dissolution have been the subject of considerable litigation in recent years. *In re Marriage of Curfman,* 446 N.W.2d 88, 90 (Iowa App.1989); *see also In re Marriage of Conger,* 492 N.W.2d 715, 717 (Iowa App.1992); *In re marriage of Hornung,* 480 N.W.2d 91, 95 (Iowa App.1991); *Voss,* 396 N.W.2d at 803. The defined benefit plan such as Fred and Jean have is difficult to value because it promises a definite amount of compensation at retirement and the value to the employee is the amount of monthly benefits promised at retirement.

Jean provided expert testimony on the pensions' valuation. Fred did not. Fred contends his pension should be valued at $43,294.25. He contends the expert's valuation is flawed. Fred makes certain specific complaints. He contends it is based on his life expectancy at age sixty which is 17.51 years and assumes he would live to seventy-seven years and six months. Yet, at this time, he is forty-seven and the life expectancy of a forty-seven year old man is 27.90 years which assumes he would live to about seventy-five years.

Fred contends the expert also assumed a future interest rate of 10.33 percent, which he contends is high considering current interest rates and it assumes his contributions will remain in the fund. And lastly, Fred contends it is not equitable to give him a property award which value is substantially dependent on his survival.

In looking at Fred's arguments, we note Jean's expert also valued her pension. Although Jean had seven years of service, the pension was not yet vested. Consequently, the expert gave no consideration to future benefits and sought to value Jean's contribution only at her contribution despite evidence it was her intention to remain in the Des Moines School system. Therefore, while the expert accepted contingencies in valuing Fred's pension, contingencies were rejected in valuing Jean's pension.

In our de novo review, we reject the expert's opinion on valuation. Because of the difficulty in placing a present value on such a plan due to the uncertainties in vesting or maturity, it seems most appropriate in this case to award an apportioned percent of pension to be paid each spouse if and when the pension is payable, apportioning benefits only if and when paid. *See Curfman*, 446 N.W.2d at 90; *see also Conger*, 492 N.W.2d at 717; *Hornung*, 480 N.W.2d at 95; *Janssen v. Janssen*, 331 N.W.2d 752, 756 (Minn.1983); *In re Marriage of Brown*, 15 Cal.3d 838, 126 Cal.Rptr. 633, 637, 544 P.2d 561, 565 (1976).

We, therefore, modify the property division to provide on retirement Fred shall pay to Jean that portion of his retirement benefits from the Des Moines School System equal to fifty percent of a fraction of his pension; the numerator of the fraction being nineteen [1] years, the number of years Fred worked for the system during the marriage and the denominator of the fraction being the total number of years during which benefits were accumulated prior to being paid. Jean on retirement shall pay to Fred that portion of her retirement benefits from the Des Moines School System equal to fifty percent of a fraction of her pension; the numerator of the fraction being five [2] years, the number of years Jean worked for the system during the marriage, and the denominator of the fraction being the total number of years during which benefits were accumulated prior to being paid.

We, also, give Fred tax-sheltered annuities in the amount of $4183 and $28,830. This will leave Fred with current property valued at about $40,000 and Jean with current property valued at about $56,000. And each will receive one-half of the pension benefits accumulated during marriage.

■■■ Fred next challenges the award of alimony. We consider alimony and property division together in assessing their individual sufficiency. They are neither made nor subject to evaluation in isolation from one another. *In re Marriage of Griffin*, 356 N.W.2d 606, 608 (Iowa App.1984). We consider pension benefits. *In re Marriage of Howell*, 434 N.W.2d 629, 632 (Iowa 1989); *In re Marriage of Huffman*, 453 N.W.2d 246, 248 (Iowa App.1990); *In re Marriage of Mott*, 444 N.W.2d 507, 510 (Iowa App.1989).

The alimony award appears to have been made by the trial court as an attempt to equalize the division when Fred's entire pension was given to him. We have now divided the pension benefits accrued during the marriage equally between Fred and Jean. The question is whether Jean is still entitled to alimony.

---

1. Fred started working for the school system in 1973, therefore, he has completed nineteen years of service and is starting his twentieth year.

2. Jean worked for the school system for seven years, but only five years are credited toward her retirement plan.

Fred has both a Bachelor's and a Master's degree. Jean has a Bachelor's degree and has done fifteen hours of graduate course work. Education is a factor to be considered on the party's earning capacity—and this is true not only on the issue of an 'equitable division of assets' but also as to whether 'alimony should be awarded and, if so, to the amount to be awarded.' *In re Marriage of Janssen*, 348 N.W.2d 251, 253–54 (Iowa 1984); *In re Marriage of Horstmann*, 263 N.W.2d 885, 891 (Iowa 1978).

Jean has received substantial assets. *See In re Marriage of Hayne*, 334 N.W.2d 347, 350–51 (Iowa App.1983). She has a measurable earning ability. Alimony is not an absolute right. *See In re Marriage of Maskel*, 225 N.W.2d 115, 120 (Iowa 1975).

We do, however, look to the fact Jean has part of a pension plan in addition to social security in assessing her need for alimony. *See In re Marriage of Schissel*, 292 N.W.2d 421, 427 (Iowa 1980); *In re Marriage of Earsa*, 480 N.W.2d 84, 86 (Iowa App.1991). Jean introduced evidence Fred would receive social security benefits attributable to marriage and received after attainment of a normal retirement date in the amount of $115,572.74 and she would receive social security benefits attributable to marriage and received after attainment of normal retirement date in the amount of $60,117.79. We recognize these benefits are totally contingent on survival.

Currently, Jean's income is not equal to Fred's income. Both Fred and Jean have adequate income to provide a high standard of living for a single person. Jean has received about $16,000 more in property than has Fred. This, together with the other factors, negate against awarding her alimony. We modify to strike the alimony award in total.

Fred contends he should not have been ordered to pay Jean's attorney fees. An award of attorney fees is not a matter of right but rest in the court's discretion considering the parties' financial positions. *See In re Marriage of Dahl*, 418 N.W.2d 358, 361 (Iowa App.1987); *In re Marriage of Bornstein*, 359 N.W.2d 500, 504 (Iowa App.1984).

We affirm the award made. We award no further attorney fees to either party. *See Dahl*, 418 N.W.2d at 361. Costs on appeal are taxed one-half to each party.

**AFFIRMED AS MODIFIED.**