**IN THE COURT OF APPEALS OF IOWA**

No. 15-0492
Filed June 15, 2016

IN RE THE MARRIAGE OF CATHY R. NELSON
AND RICHARD L. NELSON

Upon the Petition of
**CATHY R. NELSON,**
        Petitioner-Appellee,

**And Concerning**
**RICHARD L. NELSON,**
        Respondent-Appellant.
_____


        Appeal from the Iowa District Court for Polk County, Mary Pat Gunderson,

Judge.


        Respondent challenges the economic provisions of the parties' decree

dissolving their marriage.  **AFFIRMED.**


        Jeremy R. Masterson of Masterson, Bottenberg & Eichorn, L.L.P.,

Waukee, for appellant.

        Richard R. Schmidt of Spaulding, Berg & Schmidt, P.L.C., Des Moines, for

appellee.


        Considered by Tabor, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

Richard Nelson appeals the economic provisions of the decree dissolving his sixteen-year marriage to Cathy Nelson. Specifically, he challenges the property division and spousal support award. Our review is de novo. *See In re Marriage of Schenkelberg*, 824 N.W.2d 481, 484 (Iowa 2012). We examine the entire record and adjudicate anew rights on the issues properly preserved and presented. *See In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the findings of the district court, especially regarding credibility of the witnesses, but we are not bound by them. *See id.*

The parties were married in 1998. At the time of trial, Cathy was sixty and Richard was fifty-eight. There are no children of this marriage. The parties do have adult children from prior relationships. The parties separated in February 2014.

As relevant here, the record reflects the following regarding the parties' respective employment history. Both parties have a high school education (he a GED). When the parties were first married, Cathy worked as a secretary at EMC Insurance making approximately twelve dollars per hour with benefits. She has held several clerical positions over the course of the parties' marriage. In August 2013, Cathy took a position as a food service clerk with the Des Moines Public Schools. She earns $11.42 per hour. Her annual income is approximately $15,000. Richard worked for American Ambulance/Emergency Vehicle Support early in the parties' relationship, where he earned approximately fifteen dollars per hour. In 2007, he began working for the United States Postal Service (USPS). In 2012, he earned $81,000 from the USPS; in 2013, $76,349; in 2014,

$69,597.73.  His income fluctuates due to overtime.  He claims he cannot continue to participate in as much overtime as he previously did because of his health.  Richard has secondary employment/earnings.  He contracts with King Delivery Service and receives a monthly stipend of $232.81 for providing general technical support.  He operated a part-time computer consulting and repair business.  In 2012 and 2013, he had $7800 in gross earnings per year from a computer consulting business.  He testified that business was no longer viable because his main clients discontinued their patronage.

The parties have few unencumbered assets of material value.  The marital home is assessed at $161,200.  The marital home is encumbered by a mortgage of $144,074.29 and a home equity loan of $8546.63, for a total encumbrance of $152,620.92.  The parties seem to agree the home would require substantial repairs to list for sale.  The parties each have their own vehicle.  His is a Toyota 4-Runner worth approximately $3488.  Hers is a Toyota Corolla she purchased after the parties separated.  It is worth $14,599 and she owes approximately $14,000 on it.  The parties owned numerous vehicles and recreational equipment, including a skid loader, an ambulance, a school bus, a camper, a pontoon boat, and various other cars and SUVs.  Cathy testified she does not know the value of this personal property.  Richard testified it all would require some level of repair to function but could be sold for scrap.  He estimated several of the items to be worth approximately $300 each.  The parties failed to develop the record in any meaningful way regarding the value of the miscellaneous personal property.

Both parties have bank accounts. Cathy's affidavit of financial status shows a checking account with $200 and a savings account with $500. Richard's checking account balance was approximately $800. Both have retirement accounts. She has an IPERS account worth $2200. Cathy testified if she retires at age sixty-six she will receive $75 per month from that account. Richard has a thrift savings plan valued at more than $20,000. He also has a federal employees retirement system benefit (FERSB) he values at $2649.92.

Richard and Cathy incurred substantial debt during the marriage. Cathy has outstanding balances on the following credit cards: Blair, Discover, Kohl's, Sears, Target, Younkers, Visa, and a Bank of America card she obtained after the separation. Cathy testified she had consolidated many of her debts with Consumer Credit of Des Moines, but that consolidation did not include the Blair, Visa, or Younkers debts. She testified the consolidation loan was $10,000. Richard has outstanding balances on the following credit accounts: Best Buy, CitiBank, Bank of America (business), Bank of America (personal), Radio Shack, Chase, and PayPal. Cathy owes approximately $11,300 in credit card debt, and Richard owes more than $60,200.

The district court took into consideration the parties' respective financial positions and fashioned a property division and spousal support award. The district court awarded each party the vehicle in his or her possession and the associated debt. It awarded each of them the checking and savings accounts belonging to them individually. It awarded each the credit card debt as divided above. Richard was awarded the house and ordered to assume the debts thereon. Cathy was awarded her IPERS account. Richard and Cathy were each

given half of the value of his two retirement accounts (the thrift savings plan and the FERSB). The district court ordered Richard to pay Cathy traditional alimony of $750 per month until her death or remarriage, whichever comes first. In making that alimony award, the district court considered the length of the parties' marriage, their respective earning capacities, Cathy's limited employment history and skills, and the feasibility of Cathy becoming self-supporting.

Richard first contends the property distribution was inequitable. Iowa is an equitable division state. *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005). Property to be divided between the parties is divided in an equitable manner in light of the particular circumstances of the parties. *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). Assets should be given their value as of the date of trial. *See In re Marriage of McLaughlin*, 526 N.W.2d 342, 344 (Iowa Ct. App. 1994). "The partners in a marriage are 'entitled to a just and equitable share of the property accumulated through their joint efforts.'" *In re Marriage of Russell*, 473 N.W.2d 244, 246 (Iowa Ct. App. 1991) (citation omitted). The factors to consider in dividing the parties' property are set forth in Iowa Code section 598.21(5) (2013), and need not be set forth in full herein.

On de novo review, we decline to change the property distribution as Richard requests. First, Richard agreed to the division during trial. *See, e.g., In re Marriage of Stahl*, No. 02-0582, 2003 WL 557376, at *2 (Iowa Ct. App. Feb. 28, 2003) (finding record adequate to divide property where party's testimony confirmed consent to the property division). Second, Richard understates the value of the property awarded him by largely excluding the miscellaneous vehicles and personal property awarded him. Third, Richard overstates the value

of property awarded to Cathy by failing to consider the loan against her vehicle. Finally, we conclude the property division is equitable, although not equal. *See In re Marriage of Hansen*, 733 N.W.2d 683, 702 (Iowa 2007).

Richard next contends the spousal support award was inequitable. In reviewing questions of spousal support, we accord the trial court considerable latitude. *In re Marriage of Olson*, 705 N.W.2d 312, 315 (Iowa 2005). We will disturb the trial court's order only when there has been a failure to do equity. *Id.* Spousal support is not an absolute right, and an award thereof depends upon the circumstances of a particular case. *Id.* In determining the appropriate amount of spousal support, the earning capacity of each party should be considered by the court. *In re Marriage of Tzortzoudakis*, 507 N.W.2d 183, 186 (Iowa Ct. App. 1993). The ability of the one spouse to pay should be balanced against the other spouse's needs. *Id.*

Richard believes Cathy's request for alimony should have been treated as a request for rehabilitative alimony rather than traditional alimony. Iowa recognizes three types of alimony: traditional, rehabilitative, and reimbursement. Traditional alimony is payable for life or so long as a spouse is incapable of self-support. *In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005). Traditional alimony is often used in long-term marriages where life patterns have been largely set and "the earning potential of both parties can be predicted with some reliability." *In re Marriage of Francis*, 442 N.W.2d 59, 62–63 (Iowa 1989). Rehabilitative alimony provides support for an economically dependent spouse through a limited period of re-education or retraining. *Id.* at 63. Reimbursement alimony is awarded based on "economic sacrifices made by one spouse during

the marriage that directly enhance the future earning capacity of the other." *Anliker*, 694 N.W.2d at 541.

Richard argues this marriage did not cross the twenty-year "durational threshold" to "merit serious consideration for traditional spousal support." *In re Marriage of Gust*, 858 N.W.2d 402, 411 (Iowa 2015). Richard's argument is unavailing. While the *Gust* court did state that "[g]enerally speaking, marriages lasting twenty or more years commonly cross the durational threshold," *id.* at 410–11, the court did not set a bright-line test. Our court has affirmed traditional spousal support awards in marriages of shorter duration. *See, e.g.*, *Huegli v. Huegli*, No. 15-0607, 2016 WL 1681435, at *2 (Iowa Ct. App. Apr. 27, 2016) (eight years); *In re Marriage of Shepperd*, No. 14-1766, 2015 WL 7075750, at *4 (Iowa Ct. App. Nov. 12, 2015) (sixteen years); *In re Marriage of Richards*, No. 14-1698, 2015 WL 4935847, at *3 (Iowa Ct. App. Aug. 19, 2015) (sixteen years); *In re Marriage of Witherly*, 867 N.W.2d 856, 860 (Iowa Ct. App. 2015) (seventeen years). Further, the duration of the marriage is only a single factor to consider in the multifactor statutory framework. *See In re Marriage of Mauer*, 874 N.W.2d 103, 107 (Iowa 2016) ("Our recognition in *Gust* that, over time, our cases have established general principles governing spousal support awards in no way diminishes the statutory mandate to consider each criterion set forth in section 598.21A(1)."). The *Gust* court itself recognized, for example, marriages ending later in life may necessitate different treatment from those ending when the parties are younger. *See Gust*, 858 N.W.2d at 416 n.2; *see also Huegli*, 2016 WL 1681435, at *2.

On de novo review, we affirm the district court's award of alimony. The imposition and length of an award of traditional alimony is primarily predicated on the need of the payee and the payor's ability to pay. *Gust*, 858 N.W.2d at 411. The yardstick for determining need is the ability of a spouse to become self-sufficient at "a standard of living reasonably comparable to that enjoyed during the marriage." *Id.* "In determining need, we focus on the earning capability of the spouses, not necessarily on actual income." *Id.* In this case, the parties have a long-established pattern of employment and earning history. They enjoyed a certain standard of living. Cathy was sixty years of age at the time of trial and, realistically, has slim prospects of learning new skills to obtain long-term employment earning compensation that would make her self-sufficient. While it is true that both parties' standard of living will decrease following the dissolution of their marriage, this is not due to the spousal support award. It is due to the parties incurring substantial debt during the marriage that must now be repaid.

Cathy requests appellate fees. Appellate attorney fees are not a matter of right, but instead rest in the court's discretion. *Sullins*, 715 N.W.2d at 255. Factors we consider upon such a request include the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal. *Id.* We have considered those factors and decline to grant appellate attorney fees. All costs shall be taxed to Richard.

**AFFIRMED.**