# IN THE COURT OF APPEALS OF IOWA

No. 16-0293
Filed August 16, 2017

IN RE THE MARRIAGE OF MARY J. NELSON
AND KENNETH L. NELSON

Upon the Petition of
MARY J. NELSON,
     Petitioner-Appellee,

And Concerning
KENNETH L. NELSON,
     Respondent-Appellant.

_____

     Appeal from the Iowa District Court for Mitchell County, Colleen D. Weiland, Judge.

     A former husband appeals the property division and spousal support provisions of the decree that dissolved his marriage to his former wife.
**AFFIRMED AS MODIFIED.**

     Aaron R. Murphy of Walk & Murphy, P.L.C., Osage, for appellant.

     Mary J. Nelson, St. Ansgar, appellee.

     Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**VOGEL, Presiding Judge.**

Kenneth Nelson appeals certain provisions of the decree that dissolved his marriage to Mary Nelson. Kenneth claims the district court's property division and award of spousal support is inequitable.[1]

## I.    Background Facts and Proceedings

Kenneth, born in 1958, and Mary, born in 1961, were married in 1981 and made their marital home in St. Ansgar. Throughout the marriage, Kenneth and Mary worked a farming operation that included both livestock and crops. Kenneth performed most of the labor, in cooperation with his family members. Mary handled bookkeeping for the farming operation up to the time of their separation in 2011 and helped with labor occasionally. Kenneth also worked full-time at St. Ansgar Mills.

On August 25, 2011, Mary filed a petition to dissolve the marriage, seeking an equitable property distribution and spousal support. Prior to trial, the district court entered multiple orders relating to temporary matters that awarded Mary between $1500 and $2000 per month in temporary spousal support.

Trial occurred over five days in August 2013 and September 2013. After trial, the court left the record open so the parties could supplement their financial records; the parties did so up to March 5, 2014. On December 26, 2014, the court entered an order that concluded the record was still incomplete and again reopened the record for further supplementation based on the court's specific requests. The order also increased Mary's temporary spousal support award to $2300 per month. One day of trial was held on the re-opened record on May 5,

---

[1] Mary did not file an appellee's brief.

2015. On December 31, 2015, the court entered a decree that dissolved the parties' marriage but left the findings of fact, conclusions of law, and resolution of the property-distribution and spousal-support issues for a later supplemental order.

At the time of trial, Mary was living with her mother and was working part time in a seasonal agricultural job. Kenneth continued to live in the marital home with a paramour, remained employed at St. Ansgar Mills, and continued farming both individually and informally with other family members.

On January 15, 2016, the court entered a supplement decree. The court accepted the parties' stipulation to the existence and value of many of the marital assets although the sheer passage of time since the first day of trial caused great fluctuations in values, as well as the existence of many assets. Regarding the categorization and valuation of several disputed assets, the court noted: "The longstanding sharing, trading, and in-kind transfers between Ken and his family members render determination difficult. Compounding the difficulty is the less-than-forthcoming testimony offered by Ken and his family members." The court repeated its skepticism regarding Kenneth's testimony in valuing several of the disputed assets.

In dividing the marital property, the court, while concluding Mary had overstated some valuations, agreed with Mary's claim Kenneth had dissipated marital assets:

> There is sufficient evidence for me to conclude that, whether innocently or maliciously, Ken failed to disclose all of the marital assets under his control for purposes of appraisal, the parties' stipulation, or presentation to the court. His testimony was vague and obtuse about information that would have clarified assets or

values. He and his family, before and during the separation, engaged in a variety of transactions—probably both legitimate and illegitimate—that reduced the marital estate in unaccountable ways.

I further conclude that Ken has dissipated marital assets. During the separation, Ken used marital estate assets to pay his spousal support obligation. His household spending far exceeded that of Mary's. He altered his farm operating practices such that planting decreased and expenses increased (notably expenses paid to his family members). I disagree with Mary as to the extent of dissipation; certainly, some of Ken's spending was legitimate for farm operation and household purposes, especially over the time it took for this matter to come to trial. But I do conclude that dissipation occurred and should be accounted for in the overall distribution of the marital estate.

Before distributing the marital assets, the court set aside a substantial sum to Kenneth, primarily crediting him for land gifted to him by his parents, as well as a portion of the increase in value of the main farm, based what he had paid on it prior to the marriage. Ultimately, the court valued the marital estate at $1,387,000, including a $250,000 addition based on Kenneth's dissipation. The court valued Kenneth's portion of the marital assets at $1,234,600 and Mary's portion at $152,800. Based on that valuation, the court ordered Kenneth to pay Mary an equalization payment of $540,000.

In considering Mary's request for spousal support of $3000 per month, the court noted Mary did not intend to pursue further education or employment in addition to or instead of other seasonal work. The court also analyzed the ability of the parties to maintain the lifestyle they enjoyed during the marriage:

The evidence demonstrates that Ken has been able to maintain his lifestyle, including some vacations and some support of his romantic partner. He is able to share his household expenses with that romantic partner, who has shown herself willing to hide and deceive in regard to finances. Mary has lived a generally frugal life since the separation. Ken will keep the income-producing assets of the marriage, but his disposable income may well decrease as a result of servicing debt required to pay a significant property

settlement ordered herein.  Once the property settlement is paid, Mary will have significant unencumbered assets to carry her into retirement.  Ken's assets may well be encumbered.

The court ordered Kenneth, to pay Mary $2300 per month in spousal support until April 2016 and $2000 per month from May 16 on, only to terminate upon the death of either Kenneth or Mary or upon Mary's remarriage.

Kenneth appeals the property-distribution and spousal-support provisions of the dissolution decree.

## II.     Scope and Standard of Review

We review dissolution cases de novo, "giv[ing] weight to the trial court's factual findings, especially with respect to the credibility of the witnesses."  *In re Marriage of Witten*, 672 N.W.2d 768, 773 (Iowa 2003).

## III.     Property Division

Kenneth claims the district court erred in its property division because it wrongly concluded he dissipated marital assets.

"A court may generally consider a spouse's dissipation or waste of marital assets prior to dissolution when making a property distribution."  *In re Marriage of Kimbro*, 826 N.W.2d 696, 700 (Iowa 2013).  A spouse dissipates assets when they lose or dispose of assets that should have been in the marital property division at the time of the divorce.  *Id.* at 700–01.  However, marital assets may be spent on "legitimate household and business expenses."  *Id.* at 701 (citation omitted).

We apply a two-pronged test to claims of dissipation of assets.  *Id.*  First, "a court must decide 'whether the alleged purpose of the expenditure is supported by the evidence.'"  *Id.* (quoting *In re Marriage of Fennelly*, 737 N.W.2d

97, 104 (Iowa 2007) (citations omitted)). To establish this prong, a spouse "must show a nexus between the payment of the expenses and the use of the marital assets at issue." *Id.* The second prong asks "whether that purpose amounts to dissipation under the circumstances." *Fennelly*, 737 N.W.2d at 104 (citation omitted). In addressing the second prong, courts look to the following factors:

> (1) the proximity of the expenditure to the parties' separation, (2) whether the expenditure was typical of expenditures made by the parties prior to the breakdown of the marriage, (3) whether the expenditure benefited the "joint" marital enterprise or was for the benefit of one spouse to the exclusion of the other, and (4) the need for, and the amount of, the expenditure.

*Id.* at 104–05 (citation omitted).

In determining Kenneth dissipated assets, the district court concluded the record showed Kenneth had used marital assets to pay spousal support, his household expenses were high, and he decreased his farming operations and increased his farm expenses compared to prior years, including many items of expense paid to his family members. *See Kimbro*, 826 N.W.2d at 701. Notably, the court tempered its analysis by crediting Kenneth for legitimate household expenses. *See id.* The court also specifically noted that these expenses occurred after the separation, were not typical compared to the years prior to the separation, and benefitted Kenneth exclusively. *See Fennelly*, 737 N.W.2d at 104–05. Upon our review of the record, we find nothing that contradicts the district court's conclusion and affirm its conclusion that Kenneth dissipated marital assets and affirm its property division as a whole.

## IV.    Spousal Support

"Spousal support 'is not an absolute right, and an award thereof depends upon the circumstances of a particular case.'"  *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486 (Iowa 2012) (quoting *In re Marriage of Olson*, 705 N.W.2d 312, 315 (Iowa 2005)).  There are several relevant factors courts should consider when determining whether spousal support should be awarded.  *See* Iowa Code § 598.21A(1)(a)–(j) (2011).  These factors include:

> a. The length of the marriage.
> b. The age and physical and emotional health of the parties.
> c. The distribution of property made pursuant to section 598.21.
> d. The educational level of each party at the time of marriage and at the time the action is commenced.
> e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
> f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
> g. The tax consequences to each party.
> h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.
> i. The provisions of an antenuptial agreement.
> j. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1).

In awarding Mary spousal support, the district court considered the relevant factors and reasoned that the record warranted Mary receiving $2300 per month in spousal support for a brief period and $2000 per month thereafter. Specifically, the court relied on the wide disparity in the parties' monthly incomes

and the ability of Kenneth to maintain the lifestyle he enjoyed during the marriage, "including some vacations and some support of his romantic partner," while Mary had been unable to do so, living "a generally frugal life since the separation." Based on our examination of the relevant factors, we agree an award of spousal support was warranted, and we agree that $2000 is an equitable amount. However, we determine the district court inadequately considered the property distribution when considering the duration of the spousal support. *See In re Marriage of McLaughlin*, 526 N.W.2d 342, 345 (Iowa Ct. App. 1994) ("We consider alimony and property division together in assessing their individual sufficiency. They are neither made nor subject to evaluation in isolation from one another."). The record is clear that part of the justification for the property division, including a substantial equalization payment, was intended to help compensate for the parties' intent throughout the marriage that farm income from farm assets would provide for retirement. With the division of assets, Mary will be able to draw income from the assets she was awarded for her retirement. In addition, she will be able to draw social security benefits and draw income from other assets she received in the property distribution. Accordingly, we conclude equity requires Kenneth's spousal support cease when Mary begins drawing social security benefits. *See In re Marriage of Mauer*, 874 N.W.2d 103, 111–12 (Iowa 2016) (affirming the decrease of a spousal-support award based on a spouse's ability to draw income upon reaching retirement age).

**V.    Conclusion**

Because we agree Kenneth dissipated assets, we affirm the district court's equitable property division.  Additionally, we affirm the court's award of spousal support of $2000 per month; however, we modify the duration of that award to end when Mary begins drawing social security benefits.

**AFFIRMED AS MODIFIED.**