# IN THE COURT OF APPEALS OF IOWA

No. 19-2136
Filed April 28, 2021

IN RE THE MARRIAGE OF ADRIANA SIKYTA
AND JASON SIKYTA

Upon the Petition of
ADRIANA SIKYTA,
      Petitioner-Appellee,

And Concerning
JASON SIKYTA,
      Respondent-Appellant.

_____

Appeal from the Iowa District Court for Wright County, DeDra Schroeder,

Judge.


Jason Sikyta appeals the decree dissolving his marriage to Adriana Sikyta.

**AFFIRMED.**


Jessica A. Millage of Cordell Law, LLP, Des Moines, for appellant.

Dani L. Eisentrager, Eagle Grove, for appellee.


Considered by Mullins, P.J., and May and Schumacher, JJ.

**SCHUMACHER, Judge.**

Jason Sikyta appeals the decree dissolving his marriage to Adriana Sikyta. He argues the court's award of spousal support in his favor is inadequate, the property distribution is inequitable, and the court erred in awarding Adriana the dependency deductions for the parties' two minor children. He also asserts the district court should have required that Adriana refinance the mortgage on the marital home. Both parties request an award of appellate attorney fees.

## I.      Background Facts and Proceedings

At the time of trial, both parties were forty-one years of age and in good health.[1]  The parties' eldest child, who reached the age of majority prior to the dissolution trial, was born in 1999 and was not living with either parent. The parties were married in 2000 and initially resided in Lincoln, Nebraska. They had two more children, both of whom were minors at the time of trial, born in 2002 and 2006. Both minor children attend school in Ankeny. The middle child has been diagnosed with ADHD and Asperger's Syndrome. He receives extra time for taking tests and was earning "all A's with one B." Both parents expect him to further his education after high school. At the time of trial in September 2019, the parties' children were ages twenty, sixteen, and thirteen.

Both parties were employed when their first child was born. About one year later, the parties moved to Scottsbluff, Nebraska, so Adriana could attend nursing school. Adriana continued her schooling for about one semester while Jason

---

[1] Approximately twenty years ago, Jason negotiated a $20,000 settlement with an employer under a workers' compensation claim for a back injury. He had shoulder surgery approximately five years ago. He does not carry any work restrictions and has not filed for disability.

cared for the child and did not work outside the home. After about six months, the family moved back to Lincoln, where Adriana worked and Jason continued to provide care for the child. They both took college classes. The parties then moved to Colorado, where Jason obtained employment as a car salesman. The plan was for Adriana to stay home and care for the child until she found employment. However, when Jason quit his job after about two-and-one-half months, Adriana obtained full-time employment to support the family and Jason resumed caring for the child. The family moved back to Lincoln after about one-and-one-half years. Shortly after the parties returned to Lincoln, their second child was born. A third child was born while Adriana pursued her education. Adriana obtained her bachelor's degree in 2006 and master's degree in 2008.

After Adriana obtained her master's degree, the family moved to South Carolina, where Adriana was employed as a physician assistant. While in South Carolina, Jason was not employed outside the home. The two oldest children were in school by that time. The family remained in South Carolina for about one year and then moved to Clarion, Iowa, where Adriana maintained employment as a physician assistant. The parties purchased the marital home in Clarion. Approximately two-and-one-half years later, the family relocated to Cresco, Iowa. Rather than sell the Clarion home, they elected to retain such as rental property. About one year later, the family moved to Wisconsin. The family spent three years in Wisconsin and then returned to Clarion, resettling in the marital home in 2016. After the parties returned to Clarion, they vacationed frequently, taking a trip every five to eight weeks. The district court found that the "parties lived beyond their

means and accumulated few assets and a significant amount of debt," a finding with which we agree.

The parties separated in October 2018. Adriana moved into an apartment and filed a petition for dissolution of marriage in November. Adriana returned to the marital home in Clarion in July 2019 when Jason and the children moved to Ankeny.

At the time of trial, Adriana remained employed as a physician assistant in the emergency department of a regional health services center, a position she has held since 2011. Adriana currently works a seventy-two-hour shift, Friday, Saturday, and Sunday, on a rotating schedule, three out of every five weekends. She earns $88.73 per hour. In past years, Adriana also variously served as an independent contractor. Her adjusted gross income was $209,597 in 2016, $220,259 in 2017, and $202,436 in 2018. At the time of trial, Adriana testified her annual income was $180,000–$185,000. She has an IRA valued at $526.43, and she has contributed to the Iowa Public Employees' Retirement System (IPERS) since 2009.

Jason pursued post-secondary education during the marriage but is nine credits short of his bachelor's degree. Jason has not worked outside the home in nineteen years. According to Adriana, Jason spends his time as follows: "He plays video games. He watches YouTube videos. He watches TV. Sleeps late. Watches Judge Judy, enjoys when she gets on them for not working or being on disability and tells them to get a job. Trolls the internet." He also spends a couple hours per day at the gym. Adriana agreed Jason staying home was beneficial "up

until a point." Adriana, however, followed with a limitation concerning such benefit on the families' overall financial stability.

> However, he—once the kids were in school, he was no longer a stay-at-home parent. He was not keeping up on the housework. The children were responsible for the dishes. The children were responsible for a lot of the other chores. He expected me to do the chores around the house. He often called it women's work. He— The children were responsible for the lawn maintenance. So I'm not really sure what he was doing all day. So, no, I don't think that there was a lot of value in him continuing to stay at home after our youngest started school.

Adriana testified that both she and his family urged him to find employment after the youngest child began school, with his lack of employment being a source of frustration for her.[2]

During the parties' dissolution proceedings, Jason testified he had no plans for pursuing employment. In the year leading up to trial, he "applied at a few places" for some "[s]easonal work" paying $12.00 per hour. He testified if his spousal support was lowered, he would seek employment. He agreed he could obtain employment earning $12.00 per hour but only on a part-time basis given his obligation to care for the children.[3] However, he urged the court to impute no income to him for purposes of calculating child support. He further testified the court should impute additional income to Adriana that she could obtain in working a second job.

---

[2] Both Jason and Adriana agree that Jason's family urged him to provide financially for his family, with Jason's father stating he was "tapped out" after providing money to the family.

[3] The parties stipulated to joint legal custody of the minor children with physical care to Jason.

Adriana requested the court impute annual income to Jason of $31,200 based upon her assumption he could obtain full-time employment, earning $15.00-$17.00 per hour. Jason requested spousal support of $84,000 per year in addition to a child support award. Jason has no retirement assets in his name. He requested Adriana's IPERS be divided and, if he was imputed income, he be entitled to claim one of the children as a dependent for tax purposes. Adriana took the position Jason should not be entitled to her IPERS benefits due to the debt load she was assuming and requested an award of both dependency exemptions.

Following trial, the court determined Adriana's gross annual income to be $215,000. The court found "Jason is capable of being employed full time" and imputed him annual income of $24,960, concluding he is capable of obtaining full-time employment earning $12.00 per hour and noting, "There is no reason Jason should not be employed" and "it would be unjust to have the expectation that Adriana alone should be responsible for the financial needs of the children." The court added that as the parties have significant debt, "it is necessary that Jason step up to the plate to provide for the needs of the children so that the accumulated debt can be addressed without impacting the children's needs being met." The court awarded Adriana the dependency deductions for both children. The court awarded Jason $1837 in monthly child support, which would decrease to $1343 when only one child remained eligible.

The court ordered Adriana's IPERS benefits to be divided pursuant to the *Benson* formula[4] by way of a qualified domestic relations order. The court awarded

---

[4] *See In re Marriage of Benson*, 545 N.W.2d 252, 255 (Iowa 1996) (approving a percentage method of allocating pension benefits).

Adriana $183,426 in assets and assigned her $437,823 of debt. The court awarded Jason $20,500 in assets and assigned him $57,257 in debt. This debt allocation required each of the parties be responsible for their own student loan debts, most of which accrued during the marriage. The court highlighted that Adriana's student loan debt in the neighborhood of $300,000 dwarfed Jason's, which he testified amounted to $37,000. Finally, the court awarded Jason rehabilitative alimony of $2000 per month for five years.

Each party filed motions to reconsider, enlarge, or amend pursuant to Iowa Rule of Civil Procedure 1.904(2). In his motion, Jason complained of the court imputing him income, the court's spousal support award, the court's award of both tax dependency exemptions to Adriana, and not awarding him any equity in the marital home. The court denied the motions. Jason appeals.

## II.     Standard of Review

Appellate review of dissolution proceedings is de novo. Iowa R. App. 6.907; *In re Marriage of Larsen*, 912 N.W.2d 444, 448 (Iowa 2018). While we give weight to the factual findings of the district court, especially when considering the credibility of witnesses, we are not bound by them. Iowa R. App. P. 6.904(3)(g); *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007). Because the court bases its decision on the unique facts of each case, precedent is of little value. *In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009).

## III.    Analysis

### A.     Spousal Support

Jason argues the court's award of spousal support in his favor is inadequate. "[W]e accord the trial court considerable latitude in making th[e]

determination [of spousal support] and will disturb the ruling only when there has been a failure to do equity." *In re Marriage of Stenzel*, 908 N.W.2d 524, 531 (Iowa Ct. App. 2018) (first and third alterations in original) (quoting *In re Marriage of Olson*, 705 N.W.2d 312, 315 (Iowa 2005)).

Alimony is awarded under a gender-neutral classification, avoiding sexual stereotypes, and can be ordered paid to either spouse. *In re Marriage of Hass*, 502 N.W.2d 286, 287 (Iowa Ct. App. 1993). Accordingly, we look at the facts of this case through a lens of gender neutrality. We begin by noting whether to award alimony depends on the particular facts of each case. *In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976). Courts may grant an award of spousal support in a dissolution proceeding for a limited or indefinite length of time after considering all of the following relevant factors:

> (a) The length of the marriage.
> (b) The age and physical and emotional health of the parties.
> (c) The distribution of property made pursuant to section 598.21.
> (d) The educational level of each party at the time of marriage and at the time the action is commenced.
> (e) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
> (f) The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
> (g) The tax consequences to each party.
> (h) Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.
> . . . .
> (j) Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1) (2018).

"We consider alimony and property division together in assessing their individual sufficiency. They are neither made nor subject to evaluation in isolation from one another." *In re Marriage of McLaughlin*, 526 N.W.2d 342, 345 (Iowa Ct. App. 1994); *see also In re Marriage of Smario*, No. 10-1274, 2011 WL 2089593, at *1 (Iowa Ct. App. May 25, 2011).

Our supreme court recently affirmed a complete denial of alimony to a spouse whose education and historic earnings were substantially less than his spouse, finding his modest employment left him with ample free time and he was content with the less strenuous and convenient work schedule. *In re Marriage of Mann*, 943 N.W.2d 15, 17 (Iowa 2020). The court further noted that he could have expanded his economic prospects or domestic contributions if he so chose, instead of sacrificing economic potential for the benefit of the family. *Id.* at 22. In *Mann*, at the time of the trial, the parties had two young children, ages seven and three, and the wife was awarded physical care of the children. *Id.* at 17. While Jason was awarded physical care of the two minor children in the instant proceeding, the Sikyta children are considerably older than the children in the *Mann* opinion. As the district court noted, the children are of an age where "they will soon be on their own and Jason will have the freedom to explore even more employment and educational opportunities."

The "types of spousal support—whether categorized as traditional, rehabilitative or reimbursement—are not mutually exclusive." *Stenzel*, 908 N.W.2d at 531. We are not limited to awarding only one type of support or characterizing

the award as one form or another. *Id.* We are simply required to consider the statutory factors and ensure equity is achieved between the parties. *See id.* Iowa law is clear "that whether to award spousal support lies in the discretion of the court, that we must decide each case based upon its own particular circumstances, and that precedent may be of little value in deciding each case." *In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015).

We proceed to the statutory factors. The length of the Sikyta marriage is near the twenty-year durational threshold. It is a factor we consider in an award of alimony. *See* Iowa Code § 598.21A(1)(a); *Gust*, 858 N.W.2d at 410–11. Jason stayed at home and provided care for the children, and Adriana provided for the family financially. While Adriana took issue with Jason's unemployment after the children reached school age, he did provide childcare to non-school-age children for roughly twelve years. Prior to the youngest child beginning school, which was nine years before the dissolution trial, the parties appeared to agree Jason would care for the children. *See* Iowa Code § 598.21A(1)(h). Given the parties' ages and health, both have many years left of employability. In the years immediately following the dissolution, Adriana will unquestionably continue to have a higher income. We find this factor weighs in favor of a spousal-support award in some form.

While the parties' educational levels were relatively equal at the time of the marriage, both parties attended college during the marriage toward earning a bachelor's degree. Adriana obtained her bachelor's degree, and two years later she completed her master's degree in physician assistant studies during the marriage. Jason never completed his bachelor's degree. He is nine credits short

of his bachelor's degree. *See id.* § 598.21A(1)(d). We find this factor weighs in favor of a spousal-support award in some form.

We turn to earning capacity. *See id.* § 598.21A(1)(e). While Jason took issue with the district court imputing him income, he does not specifically hone in on that issue on appeal, and Adriana did not cross-appeal the imputation as inadequate. Given Jason's nineteen-year absence from the job market and the necessary efforts and expense required to elevate him to better employability, we agree with the district court's assignment of income to Jason. This factor also weighs in favor of a spousal-support award in some form.

The imposition of a spousal-support obligation is predicated on the need of the receiving spouse and the paying spouse's ability to pay. *See Gust*, 858 N.W.2d at 411; *see also* Iowa Code § 598.21A(1)(e), (f). "[T]he yardstick for determining need [is] the ability of a spouse to become self-sufficient at 'a standard of living reasonably comparable to that enjoyed during the marriage.'" *Gust*, 858 N.W.2d at 411 (quoting Iowa Code § 598.21A(1)(f)). As to need, we focus on the earning capability of the party seeking maintenance, not necessarily actual income. *Id.*; *see* Iowa Code § 598.21A(1)(e).

Jason's earning capacity will be less than Adriana's in the near future, particularly as he reenters the workforce and furthers his education, if Jason elects to do so. The disparity between the parties' incomes will, at least initially, be significant. *See Gust*, 858 N.W.2d at 411 (indicating such a disparity weighs in favor of an award of spousal support). However, critical to our review is the standard of living enjoyed during the marriage, along with debt. *See* Iowa Code § 598.21A(1)(f). While the parties did enjoy frequent travel, they were living well

beyond their means. This is not sustainable. For example, the district court found the parties lived beyond their means and accumulated few assets and a significant amount of debt. The parties owe income taxes from 2018; the real estate taxes have not been paid. Adriana is currently being garnished for past-due medical bills for the family and for a loan incurred during the marriage to pay past real estate taxes. Adriana's student loan was in default for a period of approximately five years. Credit cards service a majority of their day-to-day expenses.

The result is a mountain of debt assigned to Adriana. Adriana has not challenged the district court's debt allocation. But for the gross disparity in their incomes, a more equal debt allocation would have placed a substantial additional debt in Jason's allocation. In the absence of the large amount of marital debt, Jason's argument for a greater monthly amount or a longer durational period of alimony would perhaps be stronger. Per the court's property distribution, both parties left the marriage in debt. *See id.* § 598.21A(1)(c). Factoring in each party's assumption of their student loan debt, Adriana left the marriage with a debt liability of $437,823, nearly half of one million dollars, with Jason assuming just $57,257. Adriana's significantly worse fairing cuts against an award of spousal support. The district court was no doubt mindful of these circumstances as it balanced the spousal support needs of Jason with his ability to shoulder debt versus Adriana's ability to service the massive debt and still provide meaningful spousal support.[5]

---

[5] We also recognize that educational loans are typically assigned to the party who acquired the educational benefit. But here, that educational benefit provides the foundation to support the spousal benefit to Jason. The education debt was in effect a joint venture during the marriage, resulting in Adriana's earning potential for the benefit of the marriage. Jason wants the benefit of that debt, without any responsibility for the debt. It seems a double-dip to assign all the debt to Adriana

As highlighted in the dissent, the parties to this appeal, unlike in *Mann*, have limited assets. *See* 943 N.W.2d 15, 17–18. The dissent argues that this supports a greater award of alimony to Jason. However, this argument also cuts the other way. Without a substantial property settlement, Adriana is also in a worse position than the spouse in *Mann*. *See id.* at 18 (each spouse receiving assets valued at $359,316). She, like Jason, has little to fall back on to support Jason's large alimony request. Further, unlike the spouse in *Mann*, who received no alimony, Jason received an alimony award of $120,000. *See id.*

In balancing the interests of the parties, we recognize recent changes in federal income tax laws will result in spousal support payments by Adriana not being tax-deductible, and the payments received by Jason will not be taxable. *See id.* at 21; *see also* Iowa Code § 598.21A(1)(g). Given the facts of this case, we cannot find on this record that the district court failed to do equity between the parties. We find no punitive nature in the length or amount of the alimony award to Jason. Here, the district court was faced with the arduous task of dividing a mountain of debt with very few assets to offset the same. We find the district court appropriately balanced the spousal support needs of Jason with Adriana's ability to pay spousal support and bear the burden of the bulk of the marital debt. Upon our de novo review and consideration of the foregoing, we affirm the district court's award of alimony to Jason.

---

and require her to pay spousal support, but fail to factor in the debt associated with creating her ability to pay the support. We agree with the district court's allocation of the debt, and its recognition that her "education supported and benefited the family, and it is appropriate to consider both parties' student loans in the division of assets and debts." We also consider her assigned obligation to service the debt as a factor when considering Jason's request and need for spousal support.

B.  Property Distribution

Next, Jason claims the court's property distribution was inequitable.  Jason notes his only retirement asset is his share of Adriana's IPERS benefits and he will receive limited social security benefits.  However, the relief requested by Jason is somewhat unclear.  If Jason is requesting he be awarded more than his marital share of the IPERS benefits pursuant to the *Benson* formula, we decline the request.

Jason also complains the decree "contains no provision regarding the necessity of removing Jason's name from the mortgage" on the marital home, which was awarded to Adriana.  We question as to whether this issue remains a justiciable controversy or is now moot, as the record indicates Adriana intended to sell the home.  In any event, our record contains a certificate of change of title transferring the property to Adriana's sole ownership.  The district court ordered that Adriana would be responsible for the mortgage payments and Jason could pursue a contempt action if she failed to pay.  We agree with Adriana that it would be difficult or impossible to refinance the home given the fact that she was already behind on mortgage payments.  We affirm the district court's decree concerning Jason's requested refinancing.

Jason also seems to request he be awarded his share of equity in the marital home upon refinancing or sale.[6]  Considering the relevant factors contained in Iowa Code section 598.21(5), we find Jason suffered no inequity on this point.

---

[6] Jason does not challenge the valuation of the home awarded to Adriana.  Adriana testified to the condition the home was left in when Jason vacated the residence, and she also testified as to the cleaning and work that needed to be done before the house could even be listed for sale.

*See In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005) (noting appellate courts only disturb dissolution rulings upon a failure to do equity). The balance sheet resulting from the court's property distribution was heavily in Jason's favor. We would find it inequitable to place any more of the considerable debt accrued by the parties during the marriage on Adriana's side of the ledger, so we likewise find it would be inequitable to move any assets from her side of the ledger to Jason. As such, we affirm the district court's distribution of the marital assets and debts.

C.     Dependency Deductions

Jason argues the court acted inequitably in awarding Adriana the dependency deduction for both of the children. The "general rule" is that "the parent given primary physical care is entitled to claim the child as a tax exemption." *In re Marriage of Seay*, 746 N.W.2d 833, 836 (Iowa 2008). "However, courts have the authority to award tax exemptions to the noncustodial parent 'to achieve an equitable resolution of the economic issues presented.'" *In re Marriage of Okland*, 699 N.W.2d 260, 269 (Iowa 2005) (citation omitted). "Giving the exemption[s] to the noncustodial parent . . . may free up more money for the [children's] care." *In re Marriage of Rolek*, 555 N.W.2d 675, 679 (Iowa 1996). And courts have recognized "the 'inequity of allowing the exemption to remain with the parent who stands to benefit least.'" *Id.* (quoting *Nichols v. Tedder*, 547 So. 2d 766, 774 (Miss. 1989)).

Adriana had an annual income set by the trial court at $215,000, while Jason did not intend to seek employment any time in the near future. Jason will see little benefit, if any, if he is allowed to claim the children as dependents, while Adriana will receive meaningful benefits if allowed to claim the children. Allowing

Adriana the deductions will free up more money for the children's benefit, and we conclude allowing Jason, who stands to benefit the least, to claim the children would be inequitable. We affirm the court's award of the deductions to Adriana.

D.     Attorney Fees

Both parties request an award of appellate attorney fees. In determining whether to award attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision on appeal. *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). We also consider the relative merits of the appeal. *Id.* While Adriana was required to defend the trial court decision on appeal, Jason is not in a position to pay her appellate attorney fees. Given the division of debt, Adriana is not in a position to pay Jason's attorney fees, and he is not the successful party on appeal. We determine each party should pay their own attorney fees.

## IV.     Conclusion

We affirm the district court's decree. We deny both Adriana and Jason's requests for appellate attorney fees. Costs on appeal are assessed to Adriana.

**AFFIRMED.**

May, J., concurs; Mullins, P.J., dissents.

**MULLINS, Presiding Judge** (concurring in part and dissenting in part).

I write separately to respectfully dissent as to the amount and duration of the spousal support award affirmed in the majority opinion. I concur with all other provisions of the majority opinion.

I agree with the factual findings made by the majority and only dissent as to the final analysis of the spousal support award. Certainly, the debt load incurred by this couple and the minimal wealth accumulation weigh heavily in favor of the majority's reasoning to affirm. But, as I look at this long-term marriage and examine the likely future outcomes, Adriana's income, even after debt service, will be substantially higher than any reasonable expectation for Jason's future income. A simple estimation of her income over the next twenty years, when subtracted from the debt obligations arising from the marriage, is hundreds of thousands—if not millions—of dollars more than an estimation of his income earnings over the next twenty years. The evidence is clear she would not have that income expectation absent Jason's willingness and ability to be a stay-at-home dad to take care of the children and support Adriana in her advancement. While I recognize the fair criticism of Jason's apparent history of unemployment at times when he could have been employed, including at the time of trial, I see a punitive aspect toward Jason to the spousal support as ordered.

This case is distinguishable from *In re Marriage of Mann*. *See generally* 943 N.W.2d 15 (Iowa 2020). In *Mann*, the wife's income was about $118,000, and the husband's imputed income was $36,000. *Id.* at 17. In the present case, the district court found Adriana's income was $215,000, and Jason's imputed income was $24,960. The income disparity is more than double than in the *Mann* case.

In *Mann*, the parties had accumulated a net worth in excess of $700,000 and marital debts of less than $60,000, with the husband receiving a sizeable property settlement as his equitable share. *Id.* at 19. Here, the parties had no net worth, only substantial net debt. Unlike the parties in *Mann*, Adriana's advancement of her education and career opportunities was supported by and made possible in large part by Jason. I do not diminish the importance of her own drive and her obvious talent, but I seriously doubt she would have been able to accomplish her career objectives as fast, if at all, without Jason's support. This is not a case in which we are dealing only with income disparity, without the important factor of Jason's role in assisting her educational and professional development. Under these facts, and considering the statutory factors governing spousal support awards, equity requires more than ordered by the district court and affirmed by the majority.